**Arthur HOUSTON, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

**No. 76–4242.**

United States Court of Appeals, Fifth Circuit.

March 13, 1978.

Rehearing and Rehearing En Banc Denied April 12, 1978.

Stanley G. Schneider, Staff Counsel for Inmates, Phyllis Coci, Huntsville, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Anita Ashton, Asst. Atty. Gen., David M. Kendall, 1st Asst. Atty. Gen., Joe B. Dibrell, Jr., Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge:

On November 8, 1972, appellant Arthur Houston Jr. was convicted of possession of heroin, a crime under the laws of the state of Texas. The jury which convicted Houston sentenced him to 99 years imprisonment, the maximum sentence allowed for this crime. Houston had never before been convicted of any felony. Houston's conviction was affirmed by the Texas Court of Criminal Appeals, *Houston v. State*, 506 S.W.2d 907 (Tex.Cr.App.1974). He subsequently filed a state habeas corpus petition; his application for the writ was denied. Finally, in June 1976, he applied for federal habeas corpus relief in the District Court for the Western District of Texas. After an evidentiary hearing, Judge Roberts denied the writ. This appeal followed.

The question presented for decision is whether the state prosecutor's argument, in both the guilt/innocence and the punishment phases of the trial, was so inflammatory and prejudicial as to render Houston's trial fundamentally unfair within the meaning of the due process clause of the fourteenth amendment. *Alvarez v. Estelle,* 531 F.2d 1319 (5th Cir. 1976). Upon a thorough review of the record, including the transcript of the state trial and the evidence adduced at the evidentiary hearing below, we have concluded that the prosecutor in this case overstepped the bounds not only of propriety, but of constitutionality. We therefore reverse the district court and direct that the writ be granted.

I. Exhaustion of State Remedies

Our consideration of the merits must be deferred briefly in order to determine whether the appellant had exhausted his state remedies prior to bringing his federal habeas petition as required by 28 U.S.C. § 2254(c). Houston was represented on appeal by retained counsel. Houston's original brief on appeal to the Texas Court of Criminal Appeals contained an assignment of fourteen grounds of error of which grounds one through five were directed to the prosecutor's allegedly improper argument and questioning of witnesses. While the listing of the grounds of error lacked any reference to specific pages of the record at which the assigned errors occurred, the "statement" of errors relevant to grounds one through five, found four pages later in the brief, did contain such page references as did the discussion headed "Argument and Authorities" which immediately followed it. The state's brief asserted that the statement of errors in Houston's brief failed to comply with the formal requirements of Tex.Code of Crim.Pro. art. 40.09, Section 9 (Vernon's Pocket Part 1976) and thus presented no question requiring consideration by the appellate court. Notwithstanding the alleged failure, the state apparently was able to identify each of the challenged statements, as the state's brief went on to argue the propriety of each challenged statement under Texas law. Houston's attorneys filed a reply brief in which the original five grounds of error relevant to this issue were expanded into

fifteen to permit greater specificity in their initial statement. Once again, the *listing* omitted page references, but the "Statement" and "Argument and Authorities" portions of the brief contained specific page references to the record. The Texas Court of Criminal Appeals refused to pass upon renumbered errors one through fifteen in the reply brief:

> Appellant's brief, filed with the record in this appeal, advances some twenty-four grounds of error. Of these, grounds of error one through fifteen are multifarious and, therefore not properly before us for review. See Art. 40.09, Section 9, Vernon's Ann.C.C.P. Each of the grounds of error complains of certain testimony or argument without citing the specific page of the record wherein it allegedly occurred. The grounds of error are argued together without reference to individual grounds of error and the net result is incomprehensible. . . . [Citations omitted.]

506 S.W.2d at 908.

The Texas Court of Criminal Appeals, thus, found that Houston's claims had not been presented in an acceptable form. We do no disrespect to that court's power over practice before it when we find that Houston had exhausted his state remedies notwithstanding presentation of his claims in a form unacceptable under Texas law. While a state court undeniably has the power, within constitutional limits, to prescribe the form of briefs presented to it, it does not necessarily follow, however, that perfect compliance with such rules of briefing is always a prerequisite to the exercise of federal habeas corpus jurisdiction.

In deciding whether the merits of Houston's claim are properly before us, we must be mindful that the question is not one of federal power, but of equitable discretion. *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149 (1976); *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 826–27, 9

L.Ed.2d 837 (1963); *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 2511 n. 4, 53 L.Ed.2d 594 (Stevens, J., concurring); *id.* at 2513 n. 2 (Brennan, J., dissenting).[1] The exercise of that equitable discretion is informed by a number of principles bearing on this case. First, federal habeas corpus relief will not be withheld for failure to exhaust state remedies where state courts have had a full opportunity to determine the federal constitutional issues before resort is made to the federal forum, even if the state court does not reach the merits of the petitioner's claim. *Francisco v. Gathright,* 419 U.S. 59, 95 S.Ct. 257, 258–59, 42 L.Ed.2d 226 (1974) (highest court of state had declined to review petitioner's conviction). In determining whether a claim has been fairly presented to the state courts, a federal court is not to assume that any claim not mentioned in the opinion of the state court was not presented. *Smith v. Digmon,* ⸱—— U.S. ——, 98 S.Ct. 597, 54 L.Ed.2d —— (1978) (per curiam). Indeed, "it is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in the petitioner's brief in the state court, and, indeed, in this case, vigorously opposed in the State's brief." *Id.* In order to determine whether the issue has been fairly presented, it is necessary to examine the petitioner's brief in the state court. *Id.*; *Blankenship v. Estelle,* 545 F.2d 510, 514 (5th Cir. 1977) (issue raised in petitioner's pro se brief was exhausted even though not raised in subsequent brief filed by appointed counsel). Finally, since the exhaustion requirement is non-jurisdictional, it may be waived by the state, *Collins v. Estelle,* 474 F.2d 988, 989 (5th Cir. 1973), and we may give consideration to the expenditure of federal judicial resources below. *Thomas v.*

---

1. The issue in the case at bar is not jurisdictional whether considered as a problem of exhaustion of state remedies, *Ballard v. Maggio,* 544 F.2d 1247 (5th Cir. 1977), or as one of state procedural default. *Francis v. Henderson, su-* *pra. See generally Wainwright v. Sykes, supra,* 97 S.Ct. at 2502–04 (distinguishing between exhaustion requirement and state procedural default).

*Arizona,* 356 U.S. 390, 78 S.Ct. 885, 886–87 n. 1, 2 L.Ed.2d 863 (1958).

Applying these principles to the case at bar, we are convinced that the district court properly proceeded to the merits of Houston's claim and that we ought to do the same. We have examined Houston's brief to the Texas Court of Criminal Appeals. The assignment of errors in that brief set out in unmistakeable terms Houston's complaint that particular portions of the prosecutor's argument were unfair. Houston's argument cited the crucial cases in support of his contentions. Page references to the record were provided, albeit some four pages later in the brief than apparently required. Just as in *Smith v. Digmon, supra,* —— U.S. at ——, 98 S.Ct. 597, the state was able to identify the errors complained of and the state's brief contested Houston's claim on the merits. The state has never raised any procedural objection to federal consideration of Houston's claim. The state's answer to Houston's petition in the district court stated explicitly:

> At this time, Respondent does not contend that Petitioner has failed to exhaust his state remedies. Although neither allegation now presented was brought up in his state writ, both were presented on direct appeal.

The state fully participated in the evidentiary hearing held below on Houston's claim of impermissible argument. Even on appeal, the state has not contended that any procedural barrier stands in the way of our consideration of Houston's claim on the merits.[2] Thus, the state has never even made the argument which prevails, if at all, only as a matter of comity and has instead acquiesced in the expenditure of substantial resources in litigating the merits. In these circumstances, we hold that Houston's claim is properly before us. To hold otherwise, we think, would be to elevate a rule of equitable discretion into one of jurisdiction.

## II. Facts

The testimony at Houston's trial showed that he had been stopped by members of the Waco, Texas police force who had information that Houston was "involved in dope traffic." The officers who stopped and subsequently arrested Houston testified that Houston was a passenger in his own automobile, a 1963 Thunderbird; a black woman identified as Emma Gray was driving the car.[3] The officers ordered Houston to get out of the car and to put his hands on top of the car. After one officer had frisked Houston, another officer seized Houston by the arm and pulled him over to the patrol car. At that point, the officers saw a matchbook lying on the pavement between Houston's legs. One officer testified that he actually saw the matchbook fall from Houston's body. Houston, the police testified, attempted to kick the matchbook under the car, away from him. The matchbook was opened and ninety-two tin foil wrappers containing a white powdery substance were discovered. The substance was heroin.

Houston denied that he had anything to do with the matchbook. He insisted that it did not belong to him or fall from his person.[4] Houston also testified that he did not use heroin himself. In addition to his denial of culpability, Houston testified that he had had a dispute with a member of the police force who, Houston contended, had improperly seized and impounded a gun belonging to Houston some time earlier. The police officers who testified admitted the existence of the dispute but denied that

**2.** The state's brief in our court contains not a whisper of an objection on grounds of exhaustion. Indeed at oral argument, counsel for the state was asked expressly whether the state was satisfied that Houston's claim had been exhausted in the state forum. The answer was, "Yes, Your Honor. I believe it has been presented to the courts. It was presented on writ of error although it was referred to as being a multifarious ground." Under further questioning, counsel admitted she knew of no holding directly on point.

**3.** Ms. Gray did not testify at trial.

**4.** Houston's account was supported by the testimony of an acquaintance, Arthur Davis, who claimed to have been in the area at the time of the arrest.

they were biased against Houston on that account.

No evidence was introduced that Houston had ever made any sales of narcotics. The defendant, fifty-two years old at the time of the trial, had never been convicted of any felony.

### III.   The Petitioner's Claim

A review of the trial transcript leaves no doubt that this was a hard-fought, even acrimonious trial. It also leaves no doubt that the state prosecutor, Mr. Casey, recognized few, if any, limits on his forensic conduct. Advantage, whether gained fairly or unjustly, was the criterion to which he gave heed. Under a duty to seek justice, the prosecutor recognized only a duty to seek victory.

In a case such as this, we are required to evaluate the remarks alleged to be improper in the context of the entire trial. *See Donnelly v. De Christoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). A flavor of that context is afforded by the following passage, the opening remarks of the prosecutor's final statement during the guilt phase of the trial:

Mr. Casey: If it please the Court, ladies and gentlemen of the Jury, both defense lawyers got up here and they argued the law to you and the sanctity of the law and for yall [sic] to follow the law, how proud they were of the law and that yall were violating the oath and that yall were committing a crime if you didn't follow the law but how much respect does either one of them have for the law in this case? How many times did Judge Anderson have to tell Mr. Giles, your time is up Mr. Giles. And he just kept on going, just kept on going, that's a little thing, isn't it? But it is not any more little or nit picking than what they are doing about the charge and the evidence in this case.[5] They criticized me for making an objection,[6] I think yall heard this case and do you remember how many times you heard objections in this case and who was making them. And do you remember how many times these lawyers over here told you they were being fair with you and we believe in the jury system, how many times they tried to take this case away from you? How many times Mr. Faulkner said we want a mistrial? Take it away from the jury. How many times did yall hear that?[7]

Transcript at 312–13.

With this blow struck at a point when the defense could no longer respond to prosecutorial argument except by objection, Mr. Casey had prejudiced the right of the defendant to object to impermissible argument. Every defense objection, every motion for mistrial, was now an effort to conceal the truth, a slap at the jury.[8] In

---

5. The defense discussion of the charge emphasized the meaning of "possession" under Texas law and the importance of the reasonable doubt standard. (Transcript 301–03). A defense lawyer who failed to argue that an essential element of the crime charged had not been proved and proved beyond a reasonable doubt would be more vulnerable to a charge of incompetence than were the lawyers here to one of nitpicking.

6. The prosecutor had objected to the testimony of one defense witness on the grounds that the witness had been in court and heard the testimony of other witnesses in violation of the Rule. (Transcript at 309). Far from criticizing Mr. Casey for having objected, defense counsel conceded that Mr. Casey had made a proper objection, that he was "playing by the rules" and that the mistake was defense counsel's own. Defense counsel ended, "So we all make mistakes but I don't think we've tried to hide anything from you," *id.,* denying a charge that Mr. Casey had already impliedly levelled at the defense. (Transcript at 280–81.)

7. Mr. Casey claimed that he was permitted to make this argument in response to a defense argument. He admitted that he "couldn't argue that folks" except in response to defense argument. (Transcript at 313.) There was no defense argument made, see preceding footnote, to which Mr. Casey could fairly be said to be responding.

8. Not content with burdening the right to object, the prosecutor attacked the motives of defense counsel and the credibility of the defendant. Arguing that the defense had shifted from attempting to prove a police frame-up to attempting to prove bias affecting police perceptions, the prosecutor paraphrased the new defense argument, "we're just saying they [the

this circumstance improper or arguably improper argument presented the defense with a "heads—I win, tails—you lose" proposition. It was a circumstance the prosecutor did not hesitate to exploit.

The thrust of the prosecutor's argument was to characterize Arthur Houston as a trafficker in narcotics. Shortly after having attacked the motives and integrity of the defense, i. e. in the guilt phase of the trial, Mr. Casey argued, "He [defense counsel] doesn't want yall to realize, these fair folks that are bringing the whole case to you, that they want yall to be blind to the fact that some folks deal and sell heroin." A defense objection was made and sustained. The jury was instructed to disregard the remarks but a motion for mistrial was denied. (Transcript at 322).

Mr. Casey returned to the theme repeatedly in the punishment phase of trial as well. Because the flavor of the exchange that followed is necessary to evaluation of its effect on the jury we are compelled to quote from the transcript at length.

> *MR. CASEY* : You can send him [Houston] down there [the penitentiary], and maybe Arthur will have somebody else to front for him down there dealing this dope and you know he's dealing dope, he doesn't shoot it himself.

*MR. FAULKNER:* Now, if it please the Court, we are going to object to that, this is not a dealing case, the only charge here was for possession of heroin, and that's all he's been convicted of. This is strictly to enflame the passion of the Jury.

*COURT:* I'll sustain the objection.

*MR. FAULKNER:* We request the Court to instruct the Jury not to consider that.

*COURT:* Disregard the last remark, please.

*MR. FAULKNER:* We move for a Mistrial.

*COURT:* Motion denied.

*MR. CASEY:* Arthur Houston showed you his arms, he's proud to show he has no needle marks, I don't shoot it, I've never shot it, he didn't have the spoon to cook it in, he didn't have a tie-off rag to make his vein bulge out with and he didn't have the syringe to shoot it in his arm with and there's only two things that you can do with heroin and that's shoot it, or sell it.

*MR. FAULKNER:* If it please the Court, now, we are going to make another objection that's talking about sales, that is entirely without the record, there's no evidence whatsoever, there's not a charge for sale of heroin. This is introduced to

police] made a mistake. I wouldn't be that hypocritical to get up here and tell you folks something like that. I'll tell you this, I think Arthur Houston lied through his teeth and I think Arthur Davis lied through his teeth and I wouldn't be hypocritical enough to say, no, they just made a mistake." (Transcript at 313–14.) In a subsequent exchange, Mr. Casey explained the state's failure to subpoena Emma Gray. "I wouldn't subpoena her, I wouldn't want her up here because *I imagine she'd be like Arthur Houston's other friends and get up here and lie to you folks* and then they'd talk about that [sic] I was bound by her testimony." (Transcript at 318.) (Emphasis added.) The prosecutor did not hesitate to vouch for the credibility of prosecution witness. (E. g., Transcript at 278.) Prosecutorial statements of personal belief or disbelief in the testimony of a witness have been held to be reversible error in the context of federal prosecutions. *See, e. g., United States v. Corona,* 551 F.2d 1386, 1388–89 (5th Cir. 1977), *Hall v. United States,* 419 F.2d 582, 585–87 (5th Cir. 1977). The permissible scope of prosecutorial argument in state court prosecutions is not, however, necessarily equal to that permitted in federal court. *Bryant v. Caldwell,* 484 F.2d 65 (5 Cir. 1973), cert. denied, 415 U.S. 981, 84 S.Ct. 1572, 39 L.Ed.2d 878. In order for a state habeas petitioner to prevail on a claim that an improper jury argument marred his trial the asserted error must be one of constitutional magnitude. This means that the prosecutorial remarks must be so prejudicial that they render the trial fundamentally unfair. *Alvarez v. Estelle,* 531 F.2d 1319 (5 Cir. 1976), cert. denied, 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757. *See also Martin v. Wainwright,* 428 F.2d 356 (5 Cir.), cert. denied, 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970); *Higgins v. Wainwright,* 424 F.2d 177 (5 Cir.), cert. denied, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970). In the present case we think that the prosecutorial remarks concerning the prosecutor's personal belief or disbelief of witnesses, particularly his remarks concerning Arthur Houston's friends, form an important backdrop for Houston's due process claim.

prejudice the Jury and empassion them against probation.

*COURT:* Overruled.

*MR. FAULKNER:* Note our exception.

*MR. CASEY:* He doesn't want you to think about Arthur pushing dope.

*MR. FAULKNER:* If it please the Court, we object to this as I understand the Court's ruling, he's been instructed to refrain from that.

*COURT:* I sustain the objection.

*MR. FAULKNER:* We request the Court to instruct the Jury not to consider his statement about pushing dope.

*COURT:* You will disregard it, Ladies and Gentlemen.

*MR. FAULKNER:* We move for a mistrial.

*MR. CASEY:* I believe that Arthur testified that he didn [sic] shoot dope and it's a reasonable deduction from the evidence that 'he's not shooting it, he's selling it.

*MR. FAULKNER:* If it please the Court, now, we object to that, I thought I understood the Court's ruling to be that he was not to go into that matter.

*COURT:* I'll overrule that objection.

*MR. FAULKNER:* I'll object, Your Honor, on the basis that this is not a sale of [or] pushing of dope. This is a case in which the man has been convicted of possession of heroin. The District Attorney is going outside of the record talking about other matters to inflame and prejudice the jury against the Defendant, against his probation.

*COURT:* Overruled.

*MR. FAULKNER:* Note our exception.

*MR. CASEY:* If it had been a sale case, we'd would have had to have an undercover agent up here and he'd have to testify that I went to Arthur Houston and lied about who I was and I bought one little old hit of heroin off him.

*MR. FAULKNER:* We are going to object again, he keeps talking about a sale case when the man has been convicted of the offense of possession of heroin. There is no sale involved in this lawsuit.

*COURT:* Confine your remarks to the records and reasonable deductions therefrom, Mr. Casey.

*MR. FAULKNER:* We request the Court to instruct the Jury not to consider . .

*COURT:* You will disregard it, Ladies and Gentlemen.

*MR. FAULKNER:* We move the Court for a Mistrial.

*COURT:* Denied.

*MR. CASEY:* He had seven hundred and twenty hits of heroin. He didn't have a needle and he didn't have a spoon and he didn't have a tie-off rag. He doesn't have any needle marks he says he doesn't shoot, what was he going, what was he going to do with seven hundred and twenty hits of heroin at 5% or ninety-two hits at 40%?

(Transcript at 354–57.)

*MR. CASEY:* Now there's two purposes of penal law, it's to punish people for what they've done and it is also to rehabilitate those that are worthy of rehabilitation, or have some promise of rehabilitation. And it is to deter others. I think a man that deals in dope, possesses dope, I'm sorry, Mr. Faulkner.

*MR. FAULKNER:* If it please the Court, we object to this. That was no mistake the District Attorney just talked about.

*COURT:* Disregard it, Ladies and Gentlemen, that the District Attorney made.

*MR. FAULKNER:* We move for a Mistrial.

*COURT:* Denied.

(Transcript at 359–60.)

*MR. CASEY:* And you, by your verdict by the number of years you assess, you can tell not only Arthur Houston but all would be Arthur Houstons that the penalty for possession of dealable quantities is in McLennan County, Texas.

*MR. FAULKNER:* If it please the Court, now we object to that he keeps going back . . . a dealable quantity. It is possession of heroin and there's no testimony whatsoever in this record about a dealable quantity of heroin.

*COURT:* Overruled.

*MR. FAULKNER:* Please note our exception.

(Transcript at 360–61.)

■ Despite an attempt by the trial court to observe the distinction between arguing the evidence and suggesting inferences which the jury might draw from it and arguments beyond the evidence which suggested that Houston was a regular drug dealer and had made drug sales in the past, the prosecutor refused to observe the line drawn and crossed it repeatedly in the face of several sustained objections.[9] It is the effect of this trespass upon a trial otherwise far from a model that we must assess.

■ In this habeas corpus proceeding, we do not sit as a "super state supreme court" to review errors under state law governing the limits of permissible argument. *Martin v. Wainwright,* 428 F.2d 356, 357 (5th Cir. 1970). Nor may we, in a habeas corpus proceeding, impose upon state prosecutors the standards we apply to federal prosecutors in the exercise of our supervisory powers over the district courts. *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Nonetheless, both sets of standards provide guidance to us in the determination of a federal due process claim. Both state and federal law governing the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law. Moreover, repeated violations of a state law standard, even where that standard is not constitutionally compelled, may in the circumstances of a particular case produce a due process

violation because of the prejudicial effect of requiring the defense continually to assert objections or suffer deprivation of a right under state law.

Comments of the character quoted above have been the subject of consideration by Texas courts on many occasions. In *People v. Rodriquez, supra,* the Texas Court of Criminal Appeals reversed a conviction for improper prosecutorial argument during the punishment phase of trial. The fair import of the prosecutor's argument in that case was that Rodriquez had made many sales; the Texas court held that evidence of a single sale "will not support such an inference." 520 S.W.2d at 780 (punishment phase); Accord: *Thomas v. State, supra,* 527 S.W.2d at 567 (punishment phase). The court stated that the "quantity of heroin possessed and sold by appellant [one ounce] does not support a deduction that appellant had made other sales." *Id.* See *Turrentine v. State,* 536 S.W.2d 219 (Tex.Cr.App.1976) (evidence, over eight ounces of marijuana and marijuana paraphernalia, would not support argument that "it was reasonable deduction" from evidence that defendants were "probably giving it away or selling it."). Similarly, in *White v. State, supra,* seizure of twenty packets of heroin from the defendant was held not to support an inference that when arrested the appellant was "going somewhere up on the line to get some more." 492 S.W.2d at 489; *Cf. Cazares v. State, supra,* 488 S.W.2d at 112 (evidence supported use of term "dope peddler" by prosecutor); *Archer v. State,* 474 S.W.2d 484 (Tex.Cr.App.1977) (same).[10]

9. The line between the two types of arguments is fundamental and is imbedded in both Texas law, *see Alvarez v. Estelle,* 531 F.2d 1319, 1323 (5th Cir. 1976); *Thomas v. State,* 527 S.W.2d 567 (Tex.Cr.App.1975); *Rodriquez v. State,* 520 S.W.2d 778, 780 (Tex.Cr.App.1975); *White v. State,* 492 S.W.2d 488, 489 (Tex.Cr.App.1973); *Cazares v. State,* 488 S.W.2d 110, 112 (Tex.Cr. App.1972), and federal law. *United States v. Corona,* 551 F.2d 1386, 1389 (5th Cir. 1977); *United States v. Davis,* 487 F.2d 112, 125 (5th Cir. 1973); *United States v. Whitmore,* 156 U.S.App.D.C. 262, 480 F.2d 1154, 1158 (1973); *United States v. Gonzalez,* 488 F.2d 833, 836 (2d Cir. 1973).

10. *Cazares* was a prosecution for *sale* of heroin. While the Court of Criminal Appeals did not detail the evidence which supported the "dope peddler" reference, it may be assumed that there was direct evidence of sales because such evidence was necessary to support the conviction. The *Cazares* court did not agree that "mere references, standing alone, to a person as a 'drug pusher' or 'dope peddler' show that other sales were made by that person." 488 S.W.2d at 112. In the instant case, we are presented not with mere references standing alone but with a consistent pattern of argument whose fair import was that Houston had been trafficking in narcotics for some time and would continue to do so in the future.

Federal direct criminal appeals, which likewise do not furnish a precise due process standard to be used in habeas proceedings, do, nonetheless, suggest general notions of fairness which were disregarded in this case. In *United States v. Whitmore, supra,* a conviction for possession of heroin with intent to distribute, 21 U.S.C. § 841(a), was reversed due to the prosecutor's deliberate and repeated efforts to insinuate that the government knew the defendant was "selling dope." There too the only evidence touching that point was the inference that might be drawn from the amount of the seized heroin. 480 F.2d at 1158. In *United States v. Gonzalez,* 488 F.2d 833 (2d Cir. 1973), the Second Circuit overturned a conviction notwithstanding the "abundance of evidence to justify the jury's decision that appellant was engaged in a narcotics transaction" *id.* at 835, because of improper prosecutorial argument including a characterization of the appellant as a "repeated junk dealer." *Id.* at 836.[11] It is not use of the words "pusher" or "seller" that is forbidden, it is their use in a manner which suggests that the prosecutor knows more than he has put before the jury. In the context of Mr. Casey's persistent efforts to link Houston to the drug traffic throughout the trial, the fair import of these repeated references to dealing or selling was that Houston had made sales in the past.

The very repetition of the improper argument, moreover, had a corollary effect. The strategic impact of prejudicing the defendant's right to object to argument impermissible under Texas law manifested itself almost immediately after the exchange just quoted. Objectionable remark followed objectionable remark—without objection being made by defendant's counsel.[12] Indeed, during the final minutes of the trial, the prosecutor apparently felt free of

---

11. Among what the court in *Gonzalez* characterized as a "host of infirmities" were a number which resemble conduct of the state prosecutor in this case. In addition to the unsupported reference to the defendant as a "repeated junk dealer,"

The prosecutor opined that ' . . . you have to be born yesterday to believe . . ' appellant's defense, that appellant's testimony ' . . . *is so riddled with lies that there is only one word that comes out of his testimony:* guilty, guilty, guilty,' and that appellant was ' . . . caught dead to rights . . . red-handed.' The prosecutor characterized appellant's defense as a 'pack of lies,' 'an insult to your intelligence,' and 'a concocted defense.' Furthermore, he made derogatory comments about appellant's trial counsel's *successful* objections to evidence. *United States v. Gonzalez, supra,* 488 F.2d at 836. (Emphasis in original.) *See* footnote 8 for a sample of similar remarks by the prosecutor in this case.

12. The prosecutor suggested that the jury sentence Mr. Houston to at least sixty years imprisonment in order to give the Texas Department of Corrections sufficient time to rehabilitate him. This was improper under Texas law. *Jones v. State,* 522 S.W.2d 225, 226–27 (Tex.Cr. App.1975) (at punishment phase). Mr. Casey also exhorted the jury to reject "a second chance for Arthur Houston. I think you ought to be concerned with maybe giving [a second chance to] some of the people, some of the teenagers, some of the people that might get involved in this heroin and think about the destruction of our community that that can cause. I think you ought to think to give those people the benefit of some doubt. I think you ought to think about them." (Transcript at 354.) Later, he stated that if the jury were to come in with a sentence of

something less than ten years and you'd have to even be thinking about probation, well, I'd guarantee you that I'd certainly be sick and I think a lot of other people would be sick. I think these Police Officers who worked so hard and have to listen to all this filth and live among it day by day, I think they'll be sick and I think some of the parents of some of the children with ruined lives and some of the kinfolks of the victims, the crimes pulled by heroin addicts, I think all of those people are going to be awfully sick if you folks don't do your job.

(Transcript at 362.)

Whether or not compelled to do so as a federal constitutional matter, Texas applies the rule that argument be limited to the evidence and reasonable inferences from it as strictly in the punishment phase of trial as in the guilt phase. *See Thomas v. State,* 527 S.W.2d 567 (Tex.Cr.App.1975); *Rodriquez v. State,* 520 S.W.2d 778 (Tex.Cr.App.1974); *White v. State,* 492 S.W.2d 488 (Tex.Cr.App.1973); *cf. Mayberry v. State,* 532 S.W.2d 80, 83–85 (Tex.Cr.App. 1976) (on rehearing) (permissible to argue from large amount of heroin in defendant's possession that "it results in more crime in this community" only because heroin was to be sold and sale is itself a crime; impermissible to argue "that people do anything to get heroin"). In consequence, arguments closely akin to that quoted in this footnote have been held reversible error in view of their inflammatory character. In *Thomas, supra* the argument was,

virtually all restraint and indulged in argument that can be characterized as shockingly unfair.[13]

> There was no remorse, no apology, nothing. This is the man that says he wants you to consider the affect [sic] upon him, the affect [sic] upon him. It is a reasonable deduction from the evidence, ladies and gentlemen, and your common sense as to the affect [sic] of heroin on people. How many people has that man affected?

527 S.W.2d at 567. The *Thomas* court rested its finding of reversible error on its earlier decision in *Rodriquez, supra*. The court in *Thomas* noted that the *Rodriquez* decision "does not turn upon the intensity of the argument, but rather the obvious effect of such a strategy on the jury." 527 S.W.2d at 567. That "obvious effect" was shown by the sentence imposed, ninety-nine years imprisonment in *Thomas, id.*, and sixty-five years in *Rodriquez*. 520 S.W.2d at 779.

It may also be noted that federal courts which have considered the propriety of such remarks in the context of federal prosecutions have found them impermissible. *United States v. Bell*, 165 U.S.App.D.C. 146, 164–65, 506 F.2d 207, 225–26 (1974) (argument that defendant had caused heroin to be sold to poor people of community not proper inference from possession of $13,000 worth of heroin wrapped in tinfoil); *United States v. Perez*, 491 F.2d 167, 174 (9th Cir. 1974) (argument was improper that jury should imagine the quantity of heroin involved in case that was taken out of the hands of little children by work of narcotic agents); *United States v. Whitmore*, 156 U.S. App.D.C. 262, 266, 480 F.2d 1154, 1158 (1973) (impermissible to argue that people like defendants "tear up the lives of many young people," "'wreck peoples' lives'").

We have cited the Texas cases merely to show that the punishment phase of the trial was tainted by repeated impropriety under Texas law which defense counsel was apparently unable to prevent without suffering further unfair prejudice. In considering these remarks for this limited purpose, we need not decide whether the due process limits of permissible argument are necessarily identical at the guilt and punishment phases of trial. Furthermore, since we consider these remarks solely to exemplify the dilemma of defense counsel and the prejudice to the defendant created by the prosecutor's earlier forensic misconduct and not as a basis of relief in themselves, we need not decide whether the failure to object to these remarks bars federal habeas corpus relief, i. e., whether "cause" and "prejudice" have been established within the meaning of *Wainwright v. Sykes*, 97 S.Ct. 2497, 2508 (1977).

13. At several points, Mr. Casey attempted to associate the defendant with spectators in the courtroom. Having suggested that the specta-

■ We are aware, of course, that a defect of constitutional proportions is not to be found in any but egregious cases. We

tors were Arthur Houston's friends, (Transcript at 273), he observed that such people have nothing to do "for three days but sit around the courtroom and laugh and giggle at the testimony," and that they wear dark glasses indoors for unknown reasons. "It's lucky we don't get many of them serving on the jury," he declared. (Transcript at 349.) And then Mr. Casey, informed the jury, "what you are going to have to do is to have some courage. And you probably more than most juries are going to have some courage. A lot of times we talk to the jury about courage but this jury here will probably have to have some physical courage in more ways than one." (Transcript at 349.)

This blatant effort to inspire prejudice against Houston by associating him with spectators in the audience and to insinuate threats against the jurors on behalf of Houston by his "friends" in the courtroom was wholly unfounded in any evidence and entirely improper. It, however, was entirely consistent with earlier suggestions, equally unsupported, by the prosecutor that a prosecution witness who testified that Arthur Houston's reputation for honesty was good had been intimidated by the sight of Arthur Houston's "friends" in the courtroom. (Transcript at 318–19, esp. 319 lines 5–10.)

Perhaps the ultimate in this kind of impropriety occurred in the midst of the prosecutor's closing in the punishment phase. We reproduce it here to example the almost complete indifference of this prosecutor to elementary fairness and to the rulings of the trial court. It is regretted that this court must be as explicit as our conscience requires us to be in depicting the character of this trial.

MR. CASEY: Look at that that little old matchbox no bigger than that with a value of between $3,500.00 and $7,200.00 walking around.

SPECTATOR: Shit . . .

MR. CASEY: Now, somebody out in the crowd didn't like that remark. Somebody uttered an obscenity when I said that. One of Arthur's friends.

MR. FAULKNER: If it please the Court, we are going to object to this the Counsel keeps referring to the Crowd, one of Arthur's friends and there's no testimony whatsoever in the record that there's anyone in the courtroom other than his wife who is his friend.

COURT: Well, I'll say one thing if there's any other remarks made from the audience I'll clear the courtroom.

MR. FAULKNER: If it please the Court, can we talk about his remark now? We object to his statements about a remark made by Arthur Houston's friends out in the audience. Arthur Houston is not bound, this is a public

think this is such a case. We hold only that Arthur Houston was denied a fundamentally fair trial, not that prosecutorial remarks of the character quoted in the text necessarily constitute a due process violation. We need not prejudge future cases in which such remarks might be made in the context of a trial varying in significant respects from the trial involved here. Nor can we overlook cases bearing a superficial resemblance to the instant case in which habeas relief has been denied. *Alvarez v. Estelle*, 531 F.2d 1319 (5th Cir. 1976); *Malley v. Manson*, 547 F.2d 25 (2d Cir. 1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1335, 51 L.Ed.2d 598 (1977). But every case of this nature rests on its peculiar facts, on an assessment of the challenged prosecutorial remarks within the context of a particular trial. And when we look at these remarks in the context of this trial, we find, not what the court found in *Alvarez, supra*, 531 F.2d at 1323, i. e., a single improper remark in the context of an entire trial free from other serious infirmity, but repeated impropriety in the context of a trial already largely robbed of the dignity due a rational process by the unbridled opportunism of the prosecutor.[14] Our precedents are tolerant and charitable toward prosecutorial argu-

ment, but both tolerance and charity have these termini, and there were exceeded here. We are convinced beyond doubt that the prosecutor overstepped the norms of decency in prosecution, fairness in presentation, and truthfulness in argument. Due process, grounded in the ultimate of fairness, cannot tolerate such conduct.

It is true that the trial judge instructed the jury to disregard the prosecutor's improper remarks regarding drug sales. Such curative instructions are a device to be employed and the utility of which is to be respected. Nonetheless, we are convinced that in the circumstances of this case, this mild cure was insufficient to purge the taint. Not only did the prosecutor's repetition of the improper remarks suffice to obliterate much of the effect of the instruction but the defense, in order to get the instruction, had to assert its heavily burdened objections each and every time. At no point did the trial judge take it upon himself to discipline or even to caution the prosecuting attorney. At the evidentiary hearing below, petitioner's trial counsel testified that it was his opinion that the necessity of repeated objection itself prejudiced the defendant.[15] The Texas Court of Crim-

---

courtroom, he's not bound by any person that comes into this courtroom. He's the man on trial and he's not bound by what someone else might say in the courtroom. We object to the inference by the District Attorney that it might be one of his friends that made a remark.

COURT: I'll sustain the objection.

MR. FAULKNER: We request the Court to instruct the Jury to disregard it.

COURT: Disregard the remark, Ladies and Gentlemen.

MR. CASEY: I'll withdraw the remark but I'll tell you it wasn't my friend.

(Transcript at 358–59.) Federal convictions have been overturned on the basis of parallel conduct by federal prosecutors, *See, e. g., Hall v. United States*, 419 F.2d 582, 584–85 (5th Cir. 1969) (improper to attribute witness's wink to defendant or to characterize it without basis in evidence).

14. To recapitulate, the prosecutor flatly asserted that the defendant, his principal corroborating witness, and all his friends were liars. See footnote 8 *supra*. He characterized the defense

counsel as hypocrites, *id.*, and made a sustained effort to case the shadow of prejudice over any defense objection. He swore to the jury that he would be nauseated were the jury to grant Houston probation. *See* footnote 12 *supra*. He declared that friends of the defendant would be unfit to serve on a jury and implied that Houston's "friends" hoped to intimidate the jury by threats of violence. He attempted to tar Houston with vicarious responsibility for an expletive uttered in open court by a spectator. See footnote 13 *supra*. This is not a case of isolated aberration. This is a litany of prosecutorial anathema prejudicial to the defendant.

15. QUESTION: Did you feel that the arguments had a significant impact on the jury?

ANSWER: Yes sir. I feel that the repeated argument that Arthur Houston was a dope pusher . . . influenced the jury to such an extent that they brought an excessive verdict.

QUESTION: Did you object to these arguments?

inal Appeals itself has treated imposition of a ninety-nine year sentence as proof of prejudice stemming from improper prosecutorial argument in a narcotics *sales* case. *Thomas v. State, supra,* 527 S.W.2d at 567.[16] We have no hesitation, therefore, in concluding that Houston was prejudiced by the prosecutor's forensic misconduct notwithstanding the curative instructions. *Cf. Bryant v. Caldwell,* 484 F.2d 65, 66 (5th Cir. 1973).

The constitutional frontier stands very far indeed from the core of good prosecutorial practice. But even the wide open spaces within constitutional bounds are not sufficient range for some prosecutors. *United States ex rel. Haynes v. McKendrick,* 481 F.2d 152 (2d Cir. 1973) (due process violation in prosecutor's appeal to racial prejudice). In this case, the prosecutor repeated, over sustained objection, improper argument. He did so after having deliberately burdened the defendant's right to object to impermissible argument. He did so in the context of a trial tarnished by additional forensic misconduct. He did so to the substantial prejudice of the petitioner.

A public prosecutor wields the sword of justice. It is his duty to recall that this sword, though forged in the flame-heat of zeal is alloyed with the iron of restraint. The prosecutor in this case forgot this fundamental truth. The trial judge did not adequately remind him of it. As a result, Arthur Houston was not afforded that fundamentally fair trial to which he was entitled by the due process clause of the fourteenth amendment. We, therefore, reverse the district court and direct that the writ be granted.

REVERSED and REMANDED with directions.

ANSWER: Yes, sir. I did repeatedly.

QUESTION: Do you remember the Court's rulings on your objections to the prosecutor's argument?

ANSWER: Yes, sir. Some of my objections were sustained and I then moved for a mis-trial as Mr. Casey would repeat practically the same argument, on several occasions. Some of them were not sustained and I objected and made a motion for mistrial on that basis.

QUESTION: Did you feel that your having to constantly object to the prosecutor's side bar remarks in arguments during the guilt phase—in the present state of the trial, prejudice Arthur Houston?

ANSWER: Yes, sir. I feel that it definitely did.

16. In *Rodriquez, supra,* 520 S.W.2d at 779, imposition of a sixty-five year sentence for sale of one once of heroin, certainly a "dealable quantity," was held to be proof of prejudice resulting from improper argument. *Id.* at 780.