Fritz **WHITTINGTON,**
Petitioner-Appellant,

v.

**W.J. ESTELLE, Jr.,** Director, Texas Department of Corrections, Respondent-Appellee.

No. 81–2475.

United States Court of Appeals, Fifth Circuit.

May 20, 1983.

Curtis C. Mason, Staff Counsel for Inmates, Huntsville, Tex., for petitioner-appellant.

Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before BROWN and JOLLY, Circuit Judges, and MAHON *, District Judge.

JOHN R. BROWN, Circuit Judge:

A prisoner in the Texas Department of Corrections appeals from a District Court's denial of his petition for a writ of habeas corpus alleging constitutional error in the prosecutor's arguments to the jury and in the Court's having admitted evidence of extraneous offenses that may have been committed at the time the defendant was apprehended. Because we find that these occurrences, though disturbing, did not render Whittington's trial fundamentally unfair, we affirm.

#### The Overture: Con Brio

Officers Curran and Braun of the Houston Police Department were on routine patrol when they heard loud voices and cursing coming from Polly's Playhouse, a lounge. Upon investigation, the officers saw the appellant, Fritz Whittington, standing in the doorway of the lounge and arguing with a woman. Officer Braun followed Whittington and the woman inside the lounge and saw Whittington strike the woman. When Whittington, who was on parole at the time, saw the officer, he departed the scene through a side door.

Officers Braun and Curran pursued Whittington into the yard behind the lounge but there is some dispute as to what happened

---

* District Judge of the Northern District of Texas, sitting by designation.

thereafter. Witnesses who were at the bar testified that the officer fired shots as soon as he (Officer Braun) stepped out the door. Braun and Curran testified that they did not discharge their weapons until later when Whittington, who had already been relieved of a knife by the officers and who they were trying to subdue, attacked Curran with a pair of handcuffs he had taken from the officer. Despite these efforts and the injuries sustained by the officers, Curran and Braun were unable to subdue Whittington, who escaped.

Soon thereafter Whittington was spotted by officers Guidry and Lott. Whittington had a blood-stained T-shirt wrapped around his waist, blood stains on his pants (the result of a gunshot wound sustained in the altercation with Curran and Braun), and the pair of handcuffs in his pocket which he had taken earlier. When Guidry and Lott made their attempt to arrest him, Whittington allegedly swung at them. When two additional officers joined in the fray, Whittington allegedly pulled a screwdriver from his pocket and began swinging it at the officers. Eventually, Whittington was subdued and arrested.[1]

*The Trial: Sour Notes and All that Jazz*

Whittington was charged with aggravated assault on Officer Curran. During the trial, Whittington's attorney objected to the admission of evidence of the screwdriver incident as being highly prejudicial and as trying the defendant for criminality in general. The objection was overruled.

At the close of the evidence on guilt, the prosecutor (Camp) made the following argument:

> If you believe this story and if you believe that is what happened, then you ought to return a verdict of not guilty. But, I think you're better folks than that. I think you have a little bit more discerning character. The twelve of you were selected to represent the people in Harris County and the State of Texas. Your friends and your neighbors. After you leave this trial, your friends and neighbors are going to ask you what happened. The Judge will have instructed you to talk about it after the trial is over. They are going to ask you what happened and you are going to tell them, well, I sat on a trial where a man was accused of putting stiches in the back of an officer's head and five in the other officer and stabbing four other officers and your neighbor might ask what did you do—
>
> Now, you—and as you think about that, think about it right now. Because I think you will want to give them an answer you can be proud of, that your friends and neighbors can be proud of.
>
> Law enforcement begins at home. People talk about the weather. How awful it is. People talk about taxes and how awful that is. People talk about law enforcement in the community. Probably sometimes in the future we may be able to do something about the weather and goodness knows we will never be able to do anything about taxes, but you have an opportunity to do something about law enforcing the law. Well, right now, ladies and gentlemen, you are they. The big they.
>
> \* \* \* \* \* \*
>
> I'm going to ask, ladies and gentlemen, that based on the testimony I think you can see from 1965 on that Fritz Whittington has made a decision. He has made a very big decision and that decision is to live outside the law. He has been asking and I think by his attitude, his actions, and that story he presented to you yesterday. He's asking you to make it official and I ask you to ratify that decision that he had and label him a criminal. That's

---

1. Whittington tells a different story. He asserted that he had gone to the lounge to get a key to his apartment from his wife, who worked at Polly's part-time. When the Playhouse proprietress asked him to leave, he claimed, and she corroborated, that he gently pushed her aside. At this point, he saw Braun and Curran approaching and, because he was on parole and not supposed to be where alcoholic beverages were sold, he fled. Whittington testified that he had halted when told to do so by the officers but that Braun and Curran vilified him, struck him repeatedly with a flashlight, attempted to break his arm, and shot him twice. He denied possession of the screwdriver or that he stabbed any police officers with it.

what he is. You are not changing a thing. Law enforcement is like a chain and it's only as strong as the weakest link.

Whittington's attorney objected, but this objection was also overruled.

The jury found Whittington guilty of aggravated assault. Having twice before been convicted of felonies, Whittington was sentenced to life imprisonment under the Texas Habitual Offender Statute.

## Appellate Prelude

Whittington initially sought review of his conviction in the Texas Court of Criminal Appeals. *Whittington v. State,* 580 S.W.2d 845 (Tex.Cr.App.1979). In affirming the conviction, Presiding Judge Onion, who wrote for the majority, concluded that the jury argument complained of was a permissible plea for law enforcement. *Id.* at 847. In concurring, Judge Clinton agreed that the argument was proper but only when viewed in the context of previous jury argument decisions by that court. He was quick to point out, however, that were it not for the doctrine of *stare decisis,* he would reverse. Judge Roberts completed the discordant trio in dissent, expressing the view that the prosecutor's statements constituted an improper plea for a finding of guilt because of community expectations.[2]

The Texas courts having ruled against him, Whittington sought relief in the federal courts by petition for Writ of Habeas Corpus filed in the United States District Court for the Southern District of Texas. On June 23, 1981, Judge O'Conor entered an order dismissing Whittington's petition for failure to state a claim on which relief might be granted. A motion for Certificate of Probable Cause was filed with the District Court, which was denied. On December 7, 1981 a Certificate of Probable Cause was granted by this court.

## Whittington's Petition

### A. Variations on a Theme: The Prosecutor's Statements

Whittington's primary argument is that the prosecutor's statements to the jury constituted an impermissible plea for a finding of guilt based on community expectations. As such, he argues that they rendered his trial so fundamentally unfair that he is entitled to a Writ of Habeas Corpus. We disagree.

There can be little doubt that the jury argument complained of here is vexing in its proximity to impermissible conduct. The prosecutor here has danced a careful ballet, skillfully maintaining his balance on constitutional *pointe.* We marvel at his dexterity; yet criticize his technique.

Let there be no mistake. This Court, in denying habeas relief, does not approve the prosecutor's remarks in this case. They sound a familiar theme, a discordant elegy, diaphonic and inharmonious with traditional motives governing the conduct of public officials. Such melodies are best left unplayed.

██ Disturbing as the prosecutor's statements are, we nevertheless do not find that they deprived Whittington of a trial which was fundamentally fair. Improper jury argument by the prosecution does not present a claim of constitutional magnitude which is cognizable in a proceeding under 28 U.S.C. § 2254 unless such argument is so prejudicial that the appellant's state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Houston v. Estelle,* 569 F.2d 372, 378 n. 8 (5th Cir.1978); *Alvarez v. Estelle,* 531 F.2d 1319 (5th Cir.1976), *cert. denied,* 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757; *Marlin v. Florida,* 489 F.2d 702 (5th Cir.1973); *Mechling v. Slayton,* 361 F.Supp. 770, 774 (E.D. Va.1973), *citing Buchalter v. New York,* 319

---

**2.** Appellant argues that Judge Clinton and Judge Roberts found the complained of argument offensive to due process as a matter of *fact.* How such a determination of constitutional issues involves primarily a question of

fact is unclear. Nevertheless, since, as appellant points out, this court is not bound by state court decisions on matters of federal law, we refuse to attach the significance to this finding appellant advocates.

U.S. 427, 63 S.Ct. 1129, 87 L.Ed. 1492 (1943). *See also Martin v. Wainwright,* 428 F.2d 356 (5th Cir.), *cert. denied,* 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970); *Higgins v. Wainwright,* 424 F.2d 177 (5th Cir.), *cert. denied,* 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970). Moreover, a defect of constitutional proportions is not to be found in any but egregious cases. *Houston,* 569 F.2d at 382. Thus, in *Houston,* the court found a due process violation only in "repeated impropriety in the context of a trial already largely robbed of dignity due a rational process by the unbridled opportunism of the prosecutor." [3] *But see Alvarez v. Estelle,* 531 F.2d 1319 (5th Cir.1976). *Malley v. Manson,* 547 F.2d 25 (2d Cir.1976), *cert. denied,* 30 U.S. 918, 97 S.Ct. 1335, 51 L.Ed.2d 598 (1977).

■ In making our determination of the existence or lack of fundamental fairness here, this Court must look at the prosecutor's argument in the context of the entire trial, *United States v. Sorzano,* 602 F.2d 1201 (5th Cir.1979), and determine whether the argument was a crucial, critical, highly significant factor in the jury's determination of guilt. *Bryson v. Alabama,* 634 F.2d 862, 865 (5th Cir.1981); *Pentecost v. Estelle,* 582 F.2d 1029 (5th Cir.1978); *Blankenship v. Estelle,* 545 F.2d 510 (5th Cir.1977); *Alvarez,* 531 F.2d 1319 (5th Cir.1976).

Here, there was cogent evidence of Whittington's guilt. Officers Curran and Braun both testified in detail concerning their struggle to subdue Whittington. Braun recounted that when his handcuffs, allegedly used by Whittington to bludgeon Curran, were returned to him, they were bent and had traces of blood on them.

In addition, there were apparently no further objectionable remarks made by the prosecutor at trial nor were there any occurrences or statements which would otherwise throw this trial off key. In short, it was a proceeding free from serious infirmity [4] save the ill-chosen remarks of the prosecutor. Thus, a careful examination of those remarks is warranted.

■ In reviewing a prosecutor's argument, this court may not sit as a "super state supreme court" to review errors under state law governing the limits of permissible argument. *Houston,* 569 F.2d at 380; *Martin,* 428 F.2d at 357. Nor may we, in a habeas corpus proceeding, impose upon state prosecutors the standards we apply to federal prosecutors in the exercise of our supervisory powers over the district courts. *Houston,* 569 F.2d at 380; *Donnelly v. De-Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Nevertheless, we can and are required to make an independent determination of what is fair under the Constitution.

Appellant objects first to the prosecutor's description of Whittington as "[A] man . . . accused of putting stitches in the back of an officer's head and five in the other officer and stabbing four other officers . . ." and his comment concerning Whittington's criminal record that "Fritz Whittington has made a decision. . . . I ask that you ratify that decision that he had and label him a criminal." Appellant argues that such statements constitute an impermissible plea for a conviction based on criminality in general. *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. San Martin,* 505 F.2d 918 (5th Cir.1974); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972).

---

**3.** In *Houston,* the prosecutor flatly asserted that the defendant, his principal corroborating witness, and all his friends were liars. He characterized the defense counsel as hypocrites, and made a sustained effort to cast the shadow of prejudice over any defense objection. He swore to the jury that he would be nauseated were the jury to grant Houston probation. He declared that friends of the defendant would be unfit to serve on a jury and implied that Houston's "friends" hoped to intimidate the jury by threats of violence. He attempted to tar Houston with vicarious responsibility for an expletive uttered in open court by a spectator. As Judge Goldberg concluded, "This is not a case of isolated aberration. This is a litany of prosecutorial anathema prejudicial to the defendant." 569 F.2d at 383, n. 14.

**4.** *See* Part B of this opinion and its discussion of the admission of evidence of extraneous offenses allegedly committed by Whittington.

A prosecutor is permitted to state in closing argument what he believes has been established by the evidence and to comment fairly on it. *United States v. Martinez*, 616 F.2d 185 (5th Cir.), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1980); *United States v. Houde*, 596 F.2d 696 (5th Cir.), *cert. denied*, 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979); *Houston v. Estelle*, 569 F.2d 372 (5th Cir.1978). Moreover, in arguing to the jury, "Counsel must properly have some latitude so long as prejudice does not appear." *Schwartz v. Northwest Airlines, Inc.*, 275 F.2d 846 (2d Cir.1960). In this case, photographs and testimony had been introduced which substantiated the prosecutor's statements. Thus, we conclude that these remarks by the prosecutor were fair comment on matter in evidence and did not render Whittington's trial fundamentally unfair.

More difficult is appellant's second objection which focuses on the prosecutor's statements to the jurors that they would be required to explain their verdict to their friends and neighbors and that the jury would want to render a verdict of which they could be proud. Appellant contends that such an argument offends due process by urging conviction because of community expectations. Counsel for the State of Tex-as responds that the remarks were a proper plea for law enforcement and, nevertheless, were not so prejudicial as to render Whittington's trial fundamentally unfair. On balance, we think the position of the state is more persuasive.

We observe initially that the prosecutor's remarks here fall into a polyphonic interlude between an improper plea for conviction because of community expectations and a permissible plea for law enforcement. The prosecutor here did not say that the wishes of the community mandated a particular result. Such a comment would inject a new and harmful fact into evidence. *See Pennington v. State*, 171 Tex.Cr.R. 130, 345 S.W.2d 527 (Tex.Cr.App.1961). Rather, the prosecutor implied that the jurors would be shamed if they failed to render a verdict of guilty. While, as suggested, this argument came perilously close to an impermissible plea for conviction based on community expectations and while this kind of argument has been criticized by the Texas Court of Criminal Appeals in *Hendrix v. State*, 474 S.W.2d 230, 233, n. 1 (Tex.Cr.App.1971), neither the federal nor state courts have directly denounced this tenor of argument. In fact, the Texas courts have composed a suite of decisions approving statements closely akin to it.[5] Apparently for Texas, close only counts in dancing.

---

**5.** In *Smith v. State*, 418 S.W.2d 683 (Tex.Cr.App.1967), the court found the following argument to be permissible:

> You can see the people in the courtroom. These are the people here that will gain an impression by the verdict that you write down here. These people will hear that you have—many of them you have heard from the witness stand.

The court pointed out that although it had "carefully considered" *Hazzard, Cox* and *Pennington* and in no way approved the prosecutor's statements, it did not find that such holdings condemned the prosecutor's remarks.

In *Perbetsky v. State*, 429 S.W.2d 471 (Tex.Cr.App.1968), the court held that the statement, "Society demands that the defendant be punished," was a plea for law enforcement. Though the trial court instructed the jury not to consider the statement for any purpose, the appellate court held that even had the trial court overruled appellant's objection and refused to instruct the jury, no error would have been presented. On that basis, the ground of error was overruled.

*Myers v. State*, 468 S.W.2d 847 (Tex.Cr.App.1971), involves a challenge to three statements by the prosecutor:

> You represent the interest that some million people who live in Dallas County, have in the outcome of this case.
>
> \* \* \* \* \* \*
>
> You can say what Dallas County citizens think about protecting their women in assessing the punishment in this case.
>
> \* \* \* \* \* \*
>
> Now, I would be a charlatan or hypocrite to ask you to do something that I didn't feel deep in my heart was justified and I wouldn't ask you to do anything I couldn't do.

The court found no reversible error, finding that in cases where the arguments more closely approximated the arguments in the case at bar, the court's failures to sustain the objections did not constitute reversible error.

Error was alleged in *Overstreet v. State,* 470 S.W.2d 653 (Tex.Cr.App.1971), during the guilt

stage of the trial when the prosecutor argued that "you as citizens of Dallas County deserve to see our laws enforced. I will ask you now that if you are sick and tired of this kind of activity going on in your county—." Shortly thereafter he argued:

I will ask you, ladies and gentlemen, to go back in that jury room and write a verdict of which you may be proud, the proper verdict in this case, and where you can walk from this Courtroom and know you have done justice in Dallas County. I ask you sincerely to write a verdict of guilty as the evidence shows the woman to be.

The appellant contended that such argument was an improper attempt to induce the jury to convict because the people of the community desired or expected a conviction, and thus injected a new and harmful fact into evidence. *See also Cox v. State*, 157 Tex.Cr.R. 134, 247 S.W.2d 262, 263. The court characterized the argument as a plea for law enforcement rather than an urging that the jury convict because of community desires or expectations. The court supported this result by its reference to the objection which was sustained, the fact that the jury was instructed to disregard one portion of the argument, and the fact that no objection was made to the other.

In *Cunningham v. State*, 484 S.W.2d 906 (Tex.Cr.App.1972), appellant urged that the court committed reversible error in overruling its objection to the prosecutor's argument that crime was on the increase in the county. The court held that such an argument appeared to be a proper plea for law enforcement and thus overruled the ground of error. *See Pogue v. State*, 474 S.W.2d 492 (Tex.Cr.App.1971).

In *Hendrix v. State*, 474 S.W.2d 230 (Tex.Cr. App.1972), appellant contended that reversible error was committed when the prosecutor argued that he represented the people of the State of Texas and that, if the jurors turned guilty men loose, they and the people they represent, the other citizens of Dallas County, would suffer, "[a]nd people talk about it, you hear the hue and cry everywhere, you wonder why things like this are all happening all of this—." Appellant's counsel objected, urging that the argument was an improper plea to convict based on community expectations. The objection was overruled. Though the court observed that the opinion should not be construed as endorsing such an argument, it nevertheless held that, in light of the entire argument made, the remarks constituted a proper plea for law enforcement and did not amount to reversible error. *See Smith v. State*, 418 S.W.2d 683 (Tex.Cr.App.1967).

In *Bothwell v. State*, 500 S.W.2d 128 (Tex.Cr. App.1973), objection was made to the following argument:

We, of course, who we represent, as I told you yesterday, a million two-hundred thousand people living in this county, we can't fit them all into court. We can't have you sympathize with our side. . . .

The court acknowledged that it had held in the past that a jury argument referring to the expectations or demands of the community for a particular result constituted reversible error and cannot be cured by instructions to the jury to disregard; however, that these statements were not such an appeal and did not constitute reversible error.

The court, in *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr.App.1975), held that the prosecutor's argument referring to "a war on crime" was a proper plea for law enforcement. *See Cunningham v. State*, 484 S.W.2d 906, 911 (Tex.Cr.App.1972).

Finally, in *McCall v. State*, 540 S.W.2d 717 (Tex.Cr.App.1976), appellant complained of jury argument by the prosecutor to the effect that "the people of this community will know what your verdict is", that he was "shoving the ball" into the hands of the jury and that "a law cannot be enforced without the action of this jury." The court upheld the argument, holding that it was substantially the same as that approved by that court in *Smith v. State*, 418 S.W.2d 683 (Tex.Cr.App.1967). *See Luna v. State*, 461 S.W.2d 600 (Tex.Cr.App.1971). *See also Phillips v. State*, 511 S.W.2d 22 (Tex.Cr. App.1974) (where the court sanctioned what has sometimes been called the "they people" argument, *c.f. Minafee v. State*, 482 S.W.2d 273, 276 (Tex.Cr.App.1972), made at the guilt-innocence stage of the trial. The court held that it was, in essence a plea for law enforcement). The court went on to point out that counsel not only had the right, but a duty to make a proper plea for law enforcement. *Phillips v. State*, 450 S.W.2d 650, 651 (Tex.Cr.App. 1970).

Texas cases are not without examples of improper prosecutorial remarks. In *Cox v. State*, 157 Tex.Cr.R. 134, 247 S.W.2d 262 (Tex.Cr. App.1952), the prosecutor made the following argument to the jury: "The people of De Soto are asking the jury to convict this defendant." Because there was no evidence in the record concerning the wishes of the people of the community and because such evidence would have been inadmissible if offered, the court upheld the decision of the trial judge which recognized the improper argument and instructed the jury not to consider it. In so doing, the court relied on cases such as *Porter v. State*, 154 Tex.Cr.R. 252, 226 S.W.2d 435 (Tex.Cr.App.1950), in which it had held that the statements of the prosecuting attorney as to what the people were expecting were prejudicial and harmful to the appellant.

In *Pennington v. State*, 171 Tex.Cr.R. 130, 345 S.W.2d 527 (Tex.Cr.App.1961), the prosecutor said in his closing argument "the people of Nueces County expect you to put this man away." The court, not surprisingly, held that this language was improper and reversed the conviction. In so deciding, the court relied on *Cox v. State* and its conclusion that:

■ Moreover, viewing these arguments in the context of the trial as a whole, we cannot say that the prosecutor's remarks in this case were a crucial, critical, highly significant factor upon which the jury based its verdict of guilty. As suggested, there was quite sufficient evidence of Whittington's culpability. Thus, though the prosecutor's statements were regrettable and should not be repeated, we do not find that they rendered Whittington's trial fundamentally unfair.

### B. Grace Notes: Extraneous Offenses

■ Whittington argues second that the admission of evidence of extraneous offenses committed during his flight rendered his trial fundamentally unfair. Under Texas law, evidence of flight is always admissible as a circumstance from which an inference of guilt may be drawn. *Arivette v. State,* 513 S.W.2d 857 (Tex.Cr.App.1974); *Ysasaga v. State,* 444 S.W.2d 305 (Tex.Cr. App.1969). Moreover, evidence of flight is admissible even though it may show the commission of other crimes. *Arivette; Thames v. State,* 453 S.W.2d 495 (Tex.Cr. App.1970). In proving flight, it is proper to show the circumstances surrounding the defendant's arrest, including his resistance. *Miller v. State,* 566 S.W.2d 614 (Tex.Cr.App. 1978); *Drager v. State,* 548 S.W.2d 890 (Tex.Cr.App.1977); *Jones v. State,* 471 S.W.2d 413 (Tex.Cr.App.1971). Thus, in this case, evidence concerning extraneous offenses committed during flight was properly admitted.

Having reached this conclusion, this court must again determine whether the evidence in question was "material in the sense of a crucial, critical, highly significant factor,"

which deprived Whittington's trial of fundamental fairness. *Bryson v. Alabama,* 634 F.2d 862, 865 (5th Cir.1981). Given the evidence of guilt in the record here, we find that the jury's guilty verdict could not have been unduly influenced by evidence that Whittington assaulted other officers minutes after the initial assault. Therefore, admission into evidence of the subsequent offenses did not render his trial fundamentally unfair.

Judgment below was correct.

AFFIRMED.

---

Whenever a prosecutor tells the jury that the people of the community want an accused convicted, he is not only injecting a new and harmful fact into the evidence which had no place there originally, but he is conducting his case along lines never contemplated by the framers of our Constitution.

In addition, the court relied on *Hazzard v. State,* 111 Tex.Cr.R. 539, 15 S.W.2d 638, 639 (Tex.Cr.App.1929), in which the following prosecutor's argument was held impermissible: "The eyes of Comanche County are upon you.

Look at the crowd in this courtroom, and a crowd has been here all during this trial. The will and wish of every law abiding citizen of Comanche County wants a verdict of death." In reversing the conviction, the court held that the effect of the above language was to ask for a conviction upon public sentiment rather than upon evidence, and to give a verdict of death because the public desired it. Constitutional guarantees have been found necessary to protect the liberty of men from the hasty judgment of the multitude.