Charles BRANCH, Petitioner–Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent–Appellee.

No. 80–1515
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Dec. 4, 1980.

---

1. See, *Moody v. U. S.*, 580 F.2d 238, 239 (6th Cir. 1978).

Charles Branch, pro se.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondent–appellee.

Before AINSWORTH, GARZA and SAM D. JOHNSON, Circuit Judges.

GARZA, Circuit Judge:

Charles Branch, convicted of burglary of a habitation in Texas State Court and sentenced by a jury to 25 years imprisonment, appeals the denial of his petition for habeas corpus relief brought under 28 U.S.C. § 2254. He claims four bases for the relief sought: (1) unlawful pretrial identification procedure, (2) improper and prejudicial jury argument by the prosecution, (3) trial upon a fatally defective indictment, and (4) admission of an involuntary confession at his trial.

## FACTS

On June 9, 1975, a clear, sunny day at about 3:00 in the afternoon, Ronald Tucker was working as a building inspector for the City of Dallas. While driving in his district, Tucker observed a green Camaro automobile backed into a driveway of a residence. The occupant of the Camaro turned his head away from Tucker's view apparently attempting to avoid giving Tucker a full facial view. Tucker became suspicious, wrote down the Camaro's license number and drove around to the alley behind the residence. From the alley, driving at a very slow rate of speed, at a distance of about 60 feet, Tucker saw an unmasked male jerk on the draperies of a picture window rather than using the drapery draw cord. Tucker circled the block back to the front of the residence and observed the Camaro depart with two occupants. Tucker radioed his dispatcher who in turn radioed the Dallas police and advised of his suspicions of a burglary.

A police officer arrived at the scene and ascertained that a burglary had occurred with entry having been made by breaking the picture window at the rear of the house. Tucker gave the police officer a description of the man he saw as between 5′9″ and 5′11″, medium build, dark medium hair, dark slacks and light dress shirt—no mention of a mustache. The burglary detectives ran a license check on the license observed by Tucker and learned that the license was for a Camaro owned by the petitioner's sister. The detectives visited the sister and were told by her that the petitioner had borrowed the car. They also obtained a picture of the petitioner from his sister. The car was located at the residence of the petitioner's aunt and petitioner's fingerprints were found on the automobile.

The next day, June 11th, a Dallas police officer arrested petitioner. At the time of arrest, petitioner was given the *Miranda*

warnings, taken before a Magistrate, as required under Texas law, where he was advised of his *Miranda* rights and his rights under the Texas Code of Criminal Procedure, taken to an interrogation room where he was again read his *Miranda* rights and then petitioner gave a handwritten statement confessing his participation in the burglary. His statement was typed, he was again read his *Miranda* rights, and he signed the typed statement. Both the handwritten and typed statements contained printed *Miranda* rights at the top of the page.

The following day, June the 11th, Tucker was asked to come to the Dallas Police Station to identify the suspect. Tucker was asked to turn his back to the detective as the detective spread six photographs of white males on a table. Tucker, without hesitation, picked a picture as the man he saw inside the residence two days before.[1] Tucker never viewed a corporeal line–up. Except for the possible identification at the photographic array, Tucker never again identified the petitioner. Immediately prior to trial, about 10 months later, Tucker, inadvertently "caught a momentary glimpse" of petitioner's photograph in a police officer's folder while in the witness room waiting to testify. Tucker did make an in–court identification of petitioner.

## THE CONFESSION

Petitioner argues that he was denied due process in that his confession was involuntary and consequently unlawfully admitted into evidence at his trial. Specifically, petitioner argues that his confession was the product of promises of leniency by the interrogating officers and that he was refused presence of counsel during his interrogation. At a *Jackson v. Denno*[2] hearing, both sides presented evidence concerning the alleged promises. Petitioner testified that the interrogating officers knew that he was a fugitive from an Arkansas county jail and, if he confessed, he would be extradited back to Arkansas to serve his sentence and would not be prosecuted for the burglary. Petitioner further testified that he had no reason to doubt these promises since similar promises had been made and kept by Dallas police in dealing with him on prior occasions.

The state presented a different story at the hearing. The arresting officer testified that petitioner had been given his *Miranda* warnings and the interrogating officers testified that, although they knew that petitioner was a fugitive from Arkansas, no promises of leniency or bargains of any kind were made concerning this investigation.[3] Furthermore, the officers testified that petitioner expressly waived the presence of counsel during his interrogation and confession.

After hearing the testimony, the state trial judge, in written findings of fact and conclusions of law, found that petitioner was advised of the charges against him and properly warned of his constitutional rights. The court further found that petitioner knowingly, intelligently and voluntarily waived those rights, that there was no evidence that the confession was obtained by force, threat, fraud or promises of leniency, and impliedly held that the petitioner had waived presence of counsel.

1. At a pre–trial hearing regarding the identification procedure, Tucker testified that he picked petitioner's photograph, however, during petitioner's trial, the photograph which Tucker identified was never introduced into evidence as the photograph which Tucker selected. Nor does the testimony during trial reflect whose photograph was identified in the array. In other words, because of the prosecution's direct examination stopping just short of Tucker's identification of petitioner in the photographic line–up, the jury was left to infer that the photograph chosen by Tucker was that of petitioner.

2. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

3. The evidence is undisputed that in 1974 three Dallas Police Department detectives visited Branch, while he was in custody in Arkansas, for the purpose of resolving a series of Dallas burglaries. The detectives had made promises of non–prosecution for these prior unrelated burglaries in exchange for Branch's written confessions to them. The detectives involved however were not present or involved in Branch's confession in this case.

■ In accepting the police officer's version and rejecting petitioner's version of the events leading to the confession, the trial judge made a credibility choice based upon a full, fair and adequate factfinding procedure. The petitioner had an opportunity to present his evidence and to cross-examine the state's witnesses. Finding no exception as enumerated in the habeas corpus statute, the findings of the trial judge must be presumed correct. 28 U.S.C. § 2254(d); *La Vallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *Howard v. Maggio*, 540 F.2d 1280 (5th Cir. 1976). Petitioner is not entitled to relief on this ground.

## THE VARIANCE

Petitioner next argues that the indictment under which he was tried was fatally defective in that it alleged that the burglary was committed "on or about the 9th day of April, 1975" but that the undisputed proof at trial showed that the burglary had been committed on June 9, 1975. In fact, there is no serious doubt that petitioner was in Arkansas State Penitentiary on April 9, 1975. The trial judge refused to dismiss the indictment, the jury found petitioner guilty as charged in the indictment, and the Texas Court of Criminal Appeals refused to reverse on this ground holding that, so long as the date established by the evidence at trial is anterior to the presentment of the indictment and within the period of limitation, the variance between the indictment and the proof is not fatal to the conviction. *See Noah v. State*, Tex.Cr.App., 495 S.W.2d 260; *Glenn v. State*, Tex.Cr.App., 436 S.W.2d 344.

■■ It is settled in this Circuit that the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction. *Meyer v. Estelle*, 621 F.2d 769 (5th Cir. 1980); *Murphy v. Beto*, 416 F.2d 98 (5th Cir. 1969); *Bueno v. Beto*, 458 F.2d 457 (5th Cir. 1972). No such showing has been made here and petitioner, therefore, is not entitled to relief on this ground.

## THE PROSECUTORIAL COMMENT

Petitioner next complains that the prosecutor, in closing argument, referred to the photograph obtained from petitioner's sister as the photograph identified by Tucker.[4] The record is clear that the prosecution never introduced a photograph into evidence nor did Tucker ever identify a photograph or explain that the photograph he chose at the pre–trial identification line–up was that of petitioner. The trial court sustained a defense objection to the comment and instructed the jury to disregard it.

■ Absent a violation through prosecutorial misconduct of a specific guarantee of the Constitution, habeas corpus relief will not be granted unless the prosecution's conduct renders the trial fundamentally unfair so as to deny a defendant due process of the Fourteenth Amendment. *Donnelly v. De Christoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Cobb v. Wainwright*, 609 F.2d 754 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980); *Alvarez v. Wainwright*, 531 F.2d 1319 (5th Cir. 1976), *cert. denied*, 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757 (1977). Here, there is no specific guarantee of the Bill of Rights involved.

■ In reviewing the trial for unfairness, we must not consider the comments in isolation but rather in the context of the prosecutor's closing argument and the trial as a whole. *Cobb v. Wainwright, supra*. Viewing the prosecutor's comment in conjunction with the questionable identification procedures employed by the Dallas Police Department, as discussed later in this opinion, it is clear that the prosecution sought the jury to infer that Tucker had chosen petitioner's photograph in the pre–trial line–up but decided not to introduce

---

**4.** In closing argument the prosecutor said to the jury:

> He talked about those pictures. At the time he was arrested he had a mustache. Now, I don't think there is much argument about that, is there? Officer Brasher told you he took those pictures. He didn't remember that mustache. *This is the same picture with the mustache on it that Tucker picked out two days later.* (Emphasis added)

the photograph in its case–in–chief or later because of the obvious contradiction between the photograph and Tucker's description of the burglar. The prosecution sought to bolster this unsupportable inference in closing argument by arguing facts not in evidence—that Tucker had identified petitioner's photograph. The prosecutor was treading on thin ice and such trial tactics will never be condoned by this Court. However, after reviewing the entire transcript of the trial, we cannot conclude that the comment was so prejudicial that the trial court's curative instruction did not mitigate the comment's effect upon the jury. *U.S. v. Smith,* 517 F.2d 710 (5th Cir. 1975); *Blassingame v. Estelle,* 508 F.2d 668 (5th Cir. 1975); *U.S. v. Bryant,* 490 F.2d 1372 (5th Cir. 1974), *cert. denied,* 419 U.S. 832, 95 S.Ct. 57, 42 L.Ed.2d 58 (1974); *Thornton v. Beto,* 470 F.2d 657 (5th Cir. 1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1560, 36 L.Ed.2d 313 (1973). The petitioner's third ground for relief is denied.

## THE IDENTIFICATION PROCEDURE

■ The petitioner's last point of error deals with the identification procedure used by the Dallas Police Department. Petitioner first complains that the police should have conducted a corporeal line–up instead of a photographic array. Petitioner argues that he was constitutionally entitled to the most reliable identification procedure possible—a corporeal line–up—and, since such a procedure was not utilized, the in–court identification should have been suppressed. While we agree that a corporeal line–up is the most reliable identification procedure and for that reason the most preferable, the law is settled that a defendant has no Constitutional right to a line–up. *U.S. v. Poe,* 462 F.2d 195, 198 (5th Cir. 1972); *U.S. v. McGhee,* 488 F.2d 781, 786 (5th Cir. 1974), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3077, 41 L.Ed.2d 670 (1974), and *cert. denied sub nom., Brunner v. U.S.,* 417 U.S. 949, 94 S.Ct.

3077, 41 L.Ed.2d 670 (1974), and *cert. denied sub nom., Kendricks v. U.S.,* 417 U.S. 971, 94 S.Ct. 3177, 41 L.Ed.2d 1143 (1974). *Accord U.S. v. Allison,* 616 F.2d 779, 783 (5th Cir. 1980); *U.S. v. Sutherland,* 428 F.2d 1152, 1156 (5th Cir. 1970), *cert. denied,* 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1970). *But see U.S. v. Gidley,* 527 F.2d 1345 (5th Cir. 1976).

■ Petitioner's second argument concerning the identification procedure itself is more troublesome. Petitioner contends that the in–court identification procedure was tainted because the photographic array was so impermissibly suggestive that it created a very substantial likelihood of irreparable misidentification. However, petitioner primarily complains that the Dallas Police Department, in failing to preserve the photographic array, has precluded him from establishing the first prong of the two–prong test necessary for suppression of the in–court identification.[5] In support of his position petitioner draws our attention to *U.S. v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), wherein the Supreme Court distinguished between corporeal line–ups and photographic line–ups on the basis that the photographic line–up can be reconstructed for purposes of trial and appellate court review. Indeed, our review of cases dealing with photographic line–ups indicates that in most, if not all, of them the reviewing court has been able to independently review the array. These cases establishing minimal due process and confrontation rights regarding identification procedures would be undermined and their holdings rendered meaningless if the police could prevent their application by failing to preserve the array. We therefore hold that in situations where the police fail to preserve the photographic array, there shall exist a presumption that the array is impermissibly suggestive. With the first prong

---

5. *Simmons v. U.S.,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) set forth the two–pronged test for exclusion of in–court identification. The first prong is whether the photographic line–up is impermissibly suggestive. If it is not, the inquiry ends. If it is, a separate inquiry must be made as to whether the sug-

gestiveness leads to a substantial likelihood of irreparable misidentification. *See also Hudson v. Blackburn,* 601 F.2d 785 (5th Cir. 1979); *U.S. v. Gidley,* 527 F.2d 1345 (5th Cir. 1976); *U.S. v. Kimbrough,* 481 F.2d 421 (5th Cir. 1973); *U.S. v. Sutherland,* 428 F.2d 1152 (5th Cir. 1970).

of *Simmons* deemed established, we proceed to the second prong.

The trial court, the Texas Court of Criminal Appeals and the District Court below all based their admission of the in–court identification on the reliability of Tucker's observation on June 9th. As set forth by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) "the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

▮▮▮▮▮ The Texas Court of Criminal Appeals and the District Court below agreed with the following findings of the trial court [6]: Tucker had ample opportunity to observe the subject during the burglary, the subject never attempted to conceal his face during the observation, Tucker had not identified any other person nor had Tucker failed to identify petitioner, Tucker immediately recognized and identified Branch's picture from the array, there was no discrepancy between Tucker's description of petitioner and petitioner's actual appearance in court, there was no unreasonable lapse of time between the burglary and the trial, and the in–court identification was of independent origin.[7]

Notwithstanding the absence of evidence under which the trial court could conclude the photographic array was not impermissibly suggestive, the fact that Tucker viewed a photograph of petitioner immediately prior to testifying, the fact that the in–court identification followed the burglary by ten months, and the fact that petitioner had a substantial mustache on the date of his

arrest (and obviously on the date of the burglary), we conclude, based upon the totality of the circumstances, that the trial court's findings of fact and conclusion that Tucker's in–court identification was based upon independent origin, are supported by the evidence and are not erroneous. There was no substantial likelihood of irreparable misidentification. Petitioner's last ground of error is denied.

The judgment of the District Court is AFFIRMED.

---

**6.** The trial court also made several findings regarding the photographic array including a finding that there was no evidence to suggest that the array was suggestive. Without the array in evidence, we fail to see how the trial court could have so found and we disregard those findings as erroneous and assume that the array was impermissibly suggestive.

**7.** The trial court failed to address the fact that Tucker's in–court identification may have been tainted by the inadvertent "glimpse" of petitioner's photograph in the police officer's folder.