Arturo Longoria ORTEGA,
Petitioner-Appellant,

v.

O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 84–1755.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1987.

Antonie Wells Whittier, (Court-appointed), Dallas, Tex., for petitioner-appellant.

Daniel Zemann, Jr., Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Arturo Longoria Ortega, an inmate of the Texas Department of Corrections, is appealing the judgment of the United States District Court for the Western District of Texas denying his petition under 28 U.S.C. § 2254 for writ of habeas corpus. Ortega claims that the prosecutor, John Green, and his assistant, Dennis Cadra, made prejudicial and inflammatory remarks throughout his trial, thereby violating his due process rights to a fair trial. On July 11, 1974, a jury in the 70th District Court of Ector County, Texas, found Ortega guilty of the felony of delivering heroin, a controlled substance, and sentenced him to ninety-nine years imprisonment. The Texas Court of Criminal Appeals affirmed the conviction on November 18, 1981. After pursuing a writ of habeas corpus in the

state courts, Ortega now looks to this Court for relief.

## I. *Facts*

Ortega was charged with delivering heroin to Gerald Howard, an agent of the Texas Department of Public Safety. At trial, Howard testified that, on March 6, 1974, Ortega sold to him directly one gram of heroin for seventy dollars at the Flores Cafe in Odessa, Texas. Howard was accompanied by Elmer Don Culp, a paid government informant. Howard further testified that he marked and dated the substance received from Ortega and later delivered it to a state chemist for analysis. The chemist testified that the substance was heroin.

Ortega testified at his trial. He admitted he sold the heroin but entered a plea of not guilty to the charge of delivering the substance to Howard. Instead, he claimed to have sold one-half a gram of heroin to the informant, Elmer Don Culp, for thirty-five dollars. Culp corroborated Ortega's testimony, stating that Howard was outside in the parking lot of the Flores Cafe at the time of the sale.

The jury returned a verdict of guilty and sentenced Ortega to ninety-nine years. After the conviction was affirmed by the Texas Court of Criminal Appeals on November 18, 1981, Ortega filed a single application for state writ of habeas corpus relief in the 70th District Court of Ector County, Texas. The convicting court denied habeas corpus relief on January 27, 1983, stating that there were "no controverted, previously unresolved issues of fact material to the legality of [Ortega's] confinement." On March 1, 1983, the Texas Court of Criminal Appeals denied habeas corpus without written order. Ortega's available state remedies have been exhausted.

Ortega then filed this application for a federal writ of habeas corpus in the United States District Court for the Western District of Texas. The district court referred the case to a United States Magistrate, who recommended that relief be denied. On August 6, 1984, the district court denied Ortega's application for federal habeas corpus relief. Ortega filed a timely notice of appeal on August 27, 1984. On January 9, 1985, we granted Ortega's application for a certificate of probable cause. Apparently the delay in hearing this case on appeal arises from earlier activity on Ortega's behalf by a next friend. Counsel was then appointed on appeal.

## II. *Procedural Considerations*

Ortega contends that he did not receive a fair trial because of several improper and deliberately prejudicial comments made by the prosecutor throughout the course of the trial. In a habeas proceeding, the standard of review is whether the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. De-Christoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Jones v. Estelle*, 622 F.2d 124, 127 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980). Unless it is shown that this trial was, in fact, fundamentally unfair, the writ of habeas corpus will not issue.

Before the merits of Ortega's claims may be addressed, there are procedural issues which first must be considered. In his original brief to this Court, Ortega cited sixteen instances of objectionable and improper remarks by the prosecutor. He claims that these comments constituted prosecutorial misconduct of constitutional dimension. In response, the State contends that eleven of the sixteen violations were not raised at the habeas corpus proceeding in the federal district court, and therefore, cannot be considered. "As a general rule, contentions urged for the first time before this Court are not properly before us on an appeal from the denial of relief under 28 U.S.C.A. § 2254." *Messelt v. Alabama*, 595 F.2d 247, 250 (5th Cir.1979).

Appellant's application for federal habeas corpus relief was filed *pro se.* As a result, it is somewhat unclear from the record which of his claims were presented to the district court. It is unnecessary in

this case, however, to analyze precisely which remarks were brought before the district court, since we find that even considering all of the claimed instances of prosecutorial misconduct our ultimate decision would be unchanged.

■ The government also claims that Ortega's failure to make timely objections to some of the allegedly improper statements by the prosecutor precludes review by this Court in a habeas proceeding.[1] It is well established that failure to comply with a state's contemporaneous objection rule will preclude federal habeas review absent a showing of cause for noncompliance with the rule and actual prejudice resulting from the alleged constitutional violation. *Wainwright v. Sykes*, 433 U.S. 72, 86–88, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977). *See also, Engle v. Isaac*, 456 U.S. 107, 122–25, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Preston v. Maggio*, 705 F.2d 113, 115 (5th Cir.1983); *Prater v. Maggio*, 686 F.2d 346, 349 (5th Cir.1982). In Texas, "[t]he general rule is that any impropriety in the State's argument is waived by a defendant's failure to make a proper and timely objection." *Romo v. State*, 631 S.W.2d 504, 505 (Tex.Crim.App.1982).

One of the purposes of the rule in *Sykes* is to acknowledge the binding nature of state rules of procedure which preclude independent review by the federal courts. Therefore, this Court must first establish whether the Texas courts "refused to hear [Ortega's] federal constitutional claim because of a state law procedural defect." *Preston*, 705 F.2d at 115. When a state court is silent as to the basis of its decision, this Court will consider "whether the state court has used procedural default in similar cases to preclude review of the claim's merits, whether the history of the case would suggest that the state court was aware of the procedural default, and whether the state court's opinions suggest reliance upon procedural grounds or a determination of the merits." *Id.* at 116.

Although the general rule in *Romo* states that a defendant's failure to comply with the contemporaneous objection rule effectively waives the state's error, there is no indication in the record that either the convicting court or the Texas Court of Criminal Appeals actually was aware of or concerned about any procedural bar in this case. Also, the possibility of a procedural bar may not have been raised by the state until after the federal habeas corpus proceeding. A defense which is not timely raised by the state may be forfeited or waived. *Bradburn v. McCotter*, 786 F.2d 627, 629 (5th Cir.1986) (state waived petitioner's failure to exhaust his state court remedies by not raising it in the district court habeas proceeding). With the lack of precision and clarity in the record, we shall assume that all of the prosecutor's statements to which objection is now raised are before us. Since we are considering Ortega's claims, there is no need to order an additional evidentiary hearing.

### III. *The Merits of Ortega's Claim*

The merits of Ortega's habeas corpus claims rest upon a determination of whether the prosecutor's statements rendered Ortega's trial so fundamentally unfair as to deny him due process of law under the Fourteenth Amendment. *Donnelly*, 416 U.S. at 643, 94 S.Ct. at 1871. Ortega's objections to some of the statements made by the prosecutor are so obviously lacking in merit that we do not examine them in detail. Even when considered cumulatively, some of the statements could have no effect on our decision. Remaining statements, however, do present issues which we address.

Ortega's contentions can be divided into four categories: (1) the prosecutor improperly referred to him as "dope-seller"; (2) the prosecutor improperly impeached the testimony of Elmer Don Culp and bolstered the veracity of Gerald Howard; (3) the prosecutor impermissibly commented upon

---

**1.** Ortega suggests that we may notice errors to which no objection was made under the "plain error" doctrine of *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1 (1985). Reliance on "plain error," however, is inappropriate in a habeas corpus proceeding.

the testimony of Ortega and his witness; and (4) the prosecutor deliberately and repeatedly misstated the amount of heroin involved in the transaction. Each of these issues will be addressed in turn.

■ The first point of controversy involves the prosecutor's characterization of Ortega as a "dope-seller." [2] The record, however, supports the reasonable accuracy of the prosecutor's description. Ortega admitted at trial to selling heroin. Also, he previously had been convicted for the sale of heroin, possession of marihuana, and the possession of narcotic paraphernalia. A prosecutor's statements referring to an accused as a dope seller are not "inappropriate suggestions of enhanced criminality" when "the characterization [is] really nothing more than a statement based on the evidence ... presented at trial." *United States v. Correa-Arroyave*, 721 F.2d 792, 795 (11th Cir.1983) (prosecutor in a case involving over twenty pounds of cocaine referred to accused as "a big-time, high stakes, narcotics dealer here in Dade County"). In contrast is the case of *Houston v. Estelle*, 569 F.2d 372 (1978), in which the prosecutor made repeated references to the accused's "dealing and selling" when no evidence of such activity was introduced and the accused had never before been convicted of any felony. Prejudice was properly found in that case.

■ Second, Ortega accused the prosecutor of impermissibly questioning the veracity of Elmer Don Culp and vouching for the credibility of Gerald Howard.[3] The remarks containing the improper statements by the prosecutor that he personally believed one witness rather than the other were not so prejudicial as to render the trial fundamentally unfair. A far more extreme example is presented in *Passman v. Blackburn*, 652 F.2d 559, 567 (5th Cir.

**2.** Ortega contends that the following statements so prejudiced the jury against him that he was denied due process:

> You see we could have, but that is not the facts of the case. He is out here selling dope right and left and he says, just let me go, let me go, I can sell dope, I can go out there and sell dope all day. He is a dope-seller, he is selling grams and half a gram, he is not selling five-dollar shot packages. One time he said he was carrying it on him and then another time he went back. You just don't carry a gram of heroin around on you.
>
> So bearing that in mind, I believe the evidence will show those twelve of you who are chosen to sit on this jury that we will be trying a dope-seller here this afternoon.
>
> So you are either going to believe a man you pay to do the job to stop this, or you are going to believe a man who steals from you four times, or a man who sells dope, who has been messing with it since 1950, been in the penitentiary, gets out, sells, gets out and sells again. He is a habitual dope-seller, this is not the first time around for him, he knows what he is doing and just don't think for one minute that it would upset me or not upset me for you to turn a habitual heroin dope-seller loose in your community, it would. And it would encourage more heroin dope-sellers to say, "Look, we have got a deal, we can go up there and convince twelve people of this County that we didn't sell, and we can get our buddies to say we bought it, that he brought it from me and the agent gets up there and they don't believe the agent. We have got a heck of a

deal here in Ector County, we can sell that stuff right and left."

**3.** Ortega claims the following statements as to the veracity of the respective witnesses rendered his trial fundamentally unfair:

> As you recall, he is the only one who made written notes of the transaction and made a written report which the defendant's attorney got a copy of, the only one of three witnesses to the transaction who did that, and also, he is the only one of the three witnesses to the transaction that doesn't have a criminal record.
>
> We have no evidence to the contrary, and I can only assume from the evidence and I think you can that it was heroin.
>
> Now, the thing about Elmer Don Culp is that he is not a police officer, he is not a Department of Public Safety officer....
>
> The only one, the only witness that you heard whose testimony was not impeached by showing that he was not credible or not reliable or not believable, was Gerald Howard, a man the people of the State of Texas have hired to come in here and stem the narcotics traffic.
>
> As I said, the only one whose testimony that was not impeached and as I believe from the evidence and I think you should believe from the evidence and whose testimony I think is one hundred percent correct is Gerald Howard. He is the man that was hired by the State to come in here and stop dope seller ... I think that he is the only believable witness to the transaction that took the stand.

1981). In that case, the prosecutor stated that the defense witnesses were lying and that the state's witnesses were telling the truth. The Court held that such statements were improper and deserving of criticism but did not reach the level of denying the accused due process of law.

■ Ortega next claims that the prosecutor impermissibly speculated in opening argument upon the testimony of Ortega's witnesses and commented improperly in closing argument upon how they did testify.[4] A prosecutor's assertion of what he believes the evidence will show and has shown is not error. *United States v. Morris*, 568 F.2d 396, 401 (5th Cir.1978) ("an attorney's statements that indicate his opinion or knowledge of the case as therefore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence.")

■ The most troublesome of Ortega's objections concerns the prosecutor's repeated and exaggerated references to the amount of heroin involved in the transaction.[5] The prosecutor claimed that Ortega sold at least one gram of heroin, even though, at the beginning of the trial, the state's chemist testified that the substance he received from Gerald Howard weighed four-tenths of a gram. The trial court sustained Ortega's objection to the misstatements of the prosecutor, but he continued to use one gram as the amount of heroin involved in the transaction.

There is no doubt that some of these remarks of the prosecutor were improper. But, it is our duty to determine whether those statements also were "so prejudicial that ... the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment." *Whittington v. Estelle*, 704 F.2d 1418, 1421 (5th Cir.), *cert. denied*, 464 U.S. 983, 104 S.Ct. 428, 78 L.Ed.2d 361 (1983). "The constitutional frontier stands very far indeed from the core of good prosecutorial practice." *Houston v. Estelle*, 569 F.2d at 384. "[A] prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most 'egregious cases.'" *Menzies v. Procunier*, 743 F.2d 281, 288–89 (5th Cir.1984) (quoting *Houston v. Estelle*, 569 F.2d at 382).

The statements must be viewed in the context of the entire trial and we must

4. Ortega objects to the following statements by John Green and Dennis Cadra:

> MR. GREEN: In other words, we don't know who their witnesses are going to be or what they are going to say, whether he is going to say, I believe the evidence in most heroin cases, usually they say somebody else did it or they come up with some wild story if they take the stand, and, like I say, I don't know if he will take the stand or not....
> MR. CADRA: Then Mr. Ortega took the stand, the defendant, that he didn't sell it to Gerald Howard, he sold it to Elmer Don Culp.
> This was not totally unexpected. As you recall, Mr. Green on voir dire said he thought that this might happen and sure enough it did. He said that Elmer Don Culp came over to him and they then went into the bathroom of Flores Cafe and he sold the heroin and Elmer Don Culp left....

5. The prosecutor made the following remarks concerning the amount of heroin:

> You see we could have, but that is not the facts of the case. He is out here selling dope right and left and he says, just let me go, let

me go, I can sell dope, I can go out there and sell dope all day. He is a dope-seller, he is selling grams and half a gram, he is not selling five-dollar shot-packages. One time he said he was carrying it on him and then another time he went back. You just don't carry a gram of heroin around on you.

> All right, he sold him a gram, it is in the record here, I am not trying to misquote it, and like I said, you could have voted yesterday....

> It is in the record, half a gram or a gram. If if is half a gram, we start talking about grams, how much he was carrying, I forget, he carries so much around, he has been carrying it around since 1950, selling it. I don't know how much he sold up in Fort Worth, but anyway, you hire him to do a job. It is not important enough to have to come in here to lie to send him to the Texas Department of Corrections where he has been and where he sould [sic] be again.

> A gram of heroin that you buy for seventy dollars is not something you put on the point of a needle, if it was what would a pound sell for. A gram makes seventy shot-papers....

determine whether the improper arguments were "a crucial, critical, highly significant factor in the jury's determination of guilt." *Whittington*, 704 F.2d at 1422. We conclude that the prosecutor's comments did not have the requisite effect to justify setting aside the jury verdict in this case. The jury was entitled to believe Howard's testimony that Ortega sold the heroin to him directly and not to Elmer Don Culp. The jury further had reason to disbelieve Culp's testimony as a result of his four prior felony convictions.

■ The core question of unfair prejudice relates to the length of Ortega's sentence rather than the determination of guilt or innocence. Ortega received ninety-nine years for selling approximately half a gram of heroin. It is possible that the length of the sentence might have been affected by the prosecutor's continual references to Ortega as an habitual dope seller who was arrested for delivering enough heroin to make seventy shot papers. Ortega's past convictions, however, constitute sufficient justification for the jury's sentence. We cannot say, therefore, that any errors in Ortega's trial deprived him of due process under the Fourteenth Amendment. For these reasons, the district court order denying habeas corpus relief is

AFFIRMED.