United States Court of Appeals,

Fifth Circuit.

No. 92-5506.

Summary Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Dempsey Buford MERIDA, Defendant-Appellant.

March 5, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before POLITZ, Chief Judge, DAVIS and JONES, Circuit Judges.

POLITZ, Chief Judge:

Dempsey Buford Merida was convicted in 1983 of multiple offenses stemming from his maintenance of a drug manufacturing and importing enterprise. We affirmed on direct appeal.[1] Merida moved to vacate his convictions under 28 U.S.C. § 2255; the district court denied relief. We affirm.

Background

In 1983 a San Antonio grand jury returned a 21-count indictment against Merida and a jury found him guilty on all counts. In affirming we noted the character and extent of the "Dempsey Merida Organization," headquartered in Houston, Texas. We detailed a full account of the international scope of the operation. For present purposes it suffices to observe that Merida headed an organization dedicated to the production, importation, and distribution of drugs, including, most notably, cocaine, heroin, marihuana, methamphetamine, and amphetamine. The evidence adduced in an extended trial disclosed a number of collateral illegal activities aimed at supporting the international distribution network, including the theft of heavy equipment and vehicles and, perhaps, even homicide.

Merida now seeks to set aside his conviction because the trial court received, by his account,

---

[1] *United States v. Merida,* 765 F.2d 1205 (5th Cir.1985).

12 "hearsay exhibits."[2]  Merida's trial counsel lodged vague objections to the admission of these exhibits continually referring only to previous objections and motions made out of the presence of the jury.  The record reflects that those initial objections went to matters other than hearsay or the confrontation clause, which Merida now advances.

The magistrate judge found that trial counsel did not present contemporaneous hearsay objections to the ledgers and concluded that Merida had failed to demonstrate cause for this failure. Merida objected to the magistrate judge's report and recommendation, arguing that his trial counsel had in fact objected to the three ledgers.  In response the government conceded that Merida objected to one of the three ledgers, the first blue ledger.  The district court then recommitted the matter to the magistrate judge who again found Merida's claims with respect to the three ledgers barred for a lack of objection or cause therefor;  this time, however, she also found that the receipt of this evidence was neither plain error nor prejudicial.  Thus, according to the magistrate judge, Merida could not have been harmed by his appellate counsel's failure to raise the issue because the error was not sufficient to warrant reversal on appeal.  The district court adopted the supplemental findings and denied relief;  Merida timely appealed.

Analysis

Merida advances two distinct claims.  He maintains that the admission of the exhibits violated Fed.R.Evid. 802 as well as his constitutional right to confrontation.  He also argues that even if the admission does not warrant collateral relief, the failure of his appellate counsel to pursue the hearsay and confrontation questions on direct appeal rendered the assistance he received constitutionally inadequate.[3]  We first consider admission of these exhibits as an independent source of constitutional error.[4]

---

[2]Much of Merida's argument assails the credibility of various government witnesses.  Such assessments are the function of the jury observing the witnesses.  *United States v. Sanchez,* 961 F.2d 1169 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 330, 121 L.Ed.2d 248 (1992) (weighing credibility of witnesses is solely the province of the jury).

[3]*See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[4]Before proceeding further, we stress that relief under 28 U.S.C. § 2255 is limited to cases in which the petitioner suffers constitutional deprivation or "that narrow compass of other injury that

A. *Admission of the Exhibits*

Merida initially complained of the admission in evidence of 12 exhibits; three drug ledgers—two blue and one red—showing receipts and disbursements, and nine other exhibits.[5] Because he has abandoned his claims involving the nine nonledger exhibits we consider only the ledgers.[6]

The district court and Merida disagree whether trial counsel preserved for collateral attack the arguments Merida now advances. It cannot be gainsaid that a defendant's assertions of trial error are ordinarily beyond review where he did not make contemporaneous objections.[7] In such a case, he must show both cause for the failure to object and actual prejudice from the asserted error. Failing to acquit himself of either burden, Merida's position is totally dependent on our accepting his interpretation of events at trial. This massive record is not new to this organ of the court. A revisiting persuades that the magistrate judge has correctly viewed this record.[8]

The admission into evidence of the three ledgers raises concerns under not only the rules of evidence, but also the confrontation clause. The government contends that Merida's complaints are barred by the doctrine of procedural default. The government alternatively contends that even if not

---

could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Capua,* 656 F.2d 1033, 1037 (5th Cir.1981) (citations omitted). That said, we look for error in the admission of evidence or in appellate counsel's handling of the initial appeal which rises to the level of a constitutional deprivation. Because we agree with the district court's conclusion that the claims are procedurally defaulted, we need not also address at this point the court's conclusions that no harm resulted from the admission, erroneous or otherwise, of these ledgers.

[5]Of the remaining nine exhibits, the magistrate judge found seven were not hearsay and the remaining two were not harmful.

[6]After the magistrate judge's first report, which found the nine nonledger exhibits to have been admitted for purposes other than to prove the truth of the matters asserted, Merida limited his argument. *Wesson v. Oglesby,* 910 F.2d 278 (1990).

[7]*United States v. Shaid,* 916 F.2d 984 (5th Cir.1990), *cert. denied,* --- U.S. ----, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992).

[8]The magistrate judge conducted a thorough review of the record and concluded that as to each ledger, trial counsel simply failed to lodge hearsay or confrontation clause objections. Our independent review of the record confirms this decision.

so barred, the evidence did not constitute hearsay or a violation of Merida's confrontation rights.[9]

The red ledger, denoted government's exhibit 1011 in the record, contains names, dates, and details of drug transactions and was first introduced on October 12, 1983 during the testimony of Charles Newlin, Merida's attorney and accomplice. The government asked Newlin if he could identify the ledger. When he could not, defense counsel objected to further testimony about its contents: "Your Honor, may I have a predicate? I object to the reference to the document. The witness has said he is not familiar with the document." This objection was not sufficient to raise a question about the hearsay character of the ledger, nor was the cited exchange between defense counsel and the court about an early ruling on "James" matters which, we are all aware, relate solely to hearsay testimony of coconspirators.

When the government asked Newlin if an entry in the ledger referred to him, Merida's counsel objected "to any allusion to a document not in evidence." During the ensuing bench conference, any mystery as to the basis for the objection was clarified. The government indicated that it would later call the witness who retrieved the ledger to provide the necessary evidentiary predicate.[10] It was clear to all involved that defense counsel was objecting to testimony regarding the contents of a document which had not yet been authenticated. It was also clear that counsel was not making an objection to the hearsay nature of the ledger.[11]

The experienced trial judge conditionally admitted the ledger subject to the promised testimony and instructed the jury of the conditional nature of its admission. The dispute surrounding the admission of the red ledger ended with Chief Judge Sessions noting for the record that "1101 has been offered by the government *and has been admitted by the court* subject to later rulings [emphasis

---

[9]While we note that there is substantial support for the government's implicit argument that the decision to object to these ledgers on only fourth amendment grounds reflects a prudent decision to avoid meritless hearsay objections, we need not reach that issue.

[10]The court was well within its discretion in ordering that testimony. *See* Fed.R.Evid. 611(a).

[11]We might infer that counsel believed, as the government strenuously argues, that the ledger entries were admissions of a party opponent, directly, or through a coconspirator. *See United States v. Postal,* 589 F.2d 862 (5th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979). As noted, we do not reach that issue.

added]."[12]  The missing predicate was later provided by the testimony of IRS Special Agent McCoy who retrieved it from Merida's home.

Merida argues that defense counsel's request on October 19 for a "running bill," adopting previous objections by reference, somehow preserved the hearsay and confrontation points.  It did not.  The red ledger had already been admitted into evidence and any objection at this point would have been untimely.  In addition, the attempt to secure a running objection, even if we were inclined to treat it as sufficient to preserve error, referenced only objections made to the blue ledgers and for which counsel had been granted a continuing objection.  The objections so referenced were not hearsay objections;  rather, counsel lodged still more vague objections referring to events occurring earlier in the trial.  A review in turn of those incidents confirms that counsel had then sought to exclude the two blue ledgers as fruits of an illegal search.  Such an objection is obviously not the equivalent of or an adequate substitute for a specific hearsay objection.  We would be hesitant to find the request for a continuing objection sufficient to preserve errors to which it so vaguely referred; we would not allow it to preserve error as to matters to which it did not refer at all.[13]

The two blue ledgers were received into evidence on October 18, 1983 over objection.  Once again counsel cryptically objected by "reurg[ing] the objection heretofore made."  As noted above, at this point counsel had not made any hearsay or confrontation clause objections to these ledgers.  Counsel apparently sought to preserve the question whether the seizure of the documents violated the fourth amendment.  His specific objection was sufficient to preserve that question alone.  It was not until October 19 that counsel objected to hearsay after further testimony regarding the contents of the second blue ledger, exhibit 1102A.  The magistrate judge viewed this as an objection to the testimony of the witness, rather than to the ledger itself.  In either event, the objection came well after

---

[12]That the red ledger was admitted at this point was confirmed on October 18 when Judge Sessions reminded defense counsel that the ledger had already been admitted and that objections to the admission were no longer timely.  At no point during the debate surrounding the admission or use of this or any other ledger did counsel lodge a specific and timely hearsay or confrontation clause objection.

[13]Counsel had made specific hearsay and confrontational objections to other exhibits.  He had never requested nor received a running objection in lieu of repeating these objections, and had never made such objections to any of the three ledger exhibits.

the admission of the exhibit;  in fact, the objection came after this very witness had extensively testified as to its contents.

B. *Ineffective Assistance of Counsel on Appeal*

Merida also claims that his appellate counsel furnished constitutionally inadequate assistance by failing to brief the hearsay and confrontation clause issue on appeal.  An ineffective appellate-assistance claim is governed by the same standard announced in *Strickland,* there applied to ineffective assistance provided at trial.[14]  Under *Strickland,* a petitioner must show that appellate counsel failed to perform according to reasonable professional standards which resulted in prejudice to his appeal.

Merida is only entitled to collateral relief if, indulging the assumption that counsel's failure to raise the issue was below reasonable professional standards, the admission of the exhibits would have in fact occasioned reversal on appeal.  Because no timely and specific objection preserved the point at trial, Merida must demonstrate plain error in the admission.[15]  In light of the substantial evidence of guilt apart from the ledgers, such as Newlin's testimony confirming their incriminating aspects, we would not be persuaded to term any presumed error sufficient to warrant reversal even if the point had been preserved.  We therefore perforce find no manifest miscarriage of justice warranting a reversal.

The judgment of the district court is AFFIRMED.

---

[14]*Lofton v. Whitley,* 905 F.2d 885 (5th Cir.1990).

[15]An error is "plain" where leaving it uncorrected, despite the failure to protest below, would result in a miscarriage of justice or undermine confidence in the judicial process.  *See United States v. Ruiz,* 860 F.2d 615 (5th Cir.1988).