IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10024
Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

PETER AJAEGBU

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:96-CV-637-R)
_____
March 2, 1998
Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Peter Ajaegbu appeals the district court's denial of his

motion to vacate, set aside, or correct his sentence pursuant to

28 U.S.C. § 2255.[1]  We affirm.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.


[1]Also pending before the court is an appeal from the
district court's denial of Ajaegbu's motion for the return of
personal items seized by the government.  *United States v.
Ajaegbu*, No. 97-10024.  Although the court initially consolidated
the two appeals on motion by the government, the court has
concluded that they should proceed separately and is entering an

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 1993, a jury convicted Peter Ajaegbu of conspiring to import heroin into the United States in violation of 21 U.S.C. §§ 960 and 963. Ajaegbu, Cosmas Ekwunife, and Javier Contreras recruited young white females to transport heroin into the United States based on a belief that Customs officials would be less likely to suspect them of smuggling. The three defendants helped the female couriers to obtain passports to travel abroad and furnished them with money, airplane tickets, and instructions that resulted in the importation of heroin into the United States. The evidence indicated that the females entered the United States through several different entry points, carrying heroin that originated from different sources, and that not all of the defendants were personally involved in each instance of importation. The indictment alleged, and the jury convicted the defendants of, one overarching conspiracy.

The district court imposed a sentence of 262 months of imprisonment and five-years of supervised release. Ajaegbu appealed to this court, and we affirmed the conviction and sentence. *See United States v. Ajaegbu*, No. 93-01929 (5th Cir. Jan. 13 1995) (unpublished).

order deconsolidating the two appeals. The appeal dealing with the return of personal items is being addressed in a separate opinion.

Ajaegbu subsequently filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  In that motion, Ajaegbu contended that (1) his trial and appellate attorneys had provided ineffective assistance, (2) the venire panel did not represent a fair cross section of the community, (3) insufficient evidence existed to support the conspiracy conviction, (4) the district court made two erroneous evidentiary rulings, (5) the Government failed to disclose material and exculpatory evidence, (6) the prosecutor made an improper argument to the jury, and (7) the district court erred during sentencing.

In recommending that Ajaegbu's § 2255 motion be denied, the magistrate judge rejected each alleged instance of ineffective assistance of both trial and appellate counsel and determined that the evidence was sufficient and that the prosecutor had not made an improper jury argument.  Of the remaining issues in Ajaegbu's § 2255 motion, the magistrate judge determined that either this court had ruled on them in Ajaegbu's direct appeal or Ajaegbu had not shown cause for his failure to raise the issues on direct appeal.  After independent review of the record, the district court adopted the magistrate's recommendation and entered judgment denying Ajaegbu's § 2255 motion.

## II.  DISCUSSION

Ajaegbu contends that his trial attorney was ineffective for failing to interview three witnesses or call them to testify and

3

for failing to investigate and obtain evidence to impeach three government witnesses. Ajaegbu asserts that his appellate counsel was ineffective on direct appeal for failing to argue that a variance existed between the proof at trial and the indictment, failing to allege prosecutorial misconduct, and failing to challenge two sentencing decisions.

Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). In reviewing a district court's denial of a § 2255 motion, we examine findings of fact for clear error and questions of law *de novo*. *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994). Whether counsel provided ineffective assistance is a mixed question that we review *de novo*. *Id.*

To prevail on his claim of ineffective assistance of counsel, Ajaegbu must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 678 (1984)). Performance is deficient only if counsel's conduct is so egregious that the assistance rendered is below the standard guaranteed by the Sixth Amendment. *Id.* To satisfy the prejudice prong, Ajaegbu must demonstrate that counsel's errors rendered

4

"the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Faubion*, 19 F.3d at 228. Ajaegbu must satisfy both prongs to prevail. A failure to establish either deficient performance or prejudice defeats the claim. *Strickland*, 466 U.S. at 697. The *Strickland* standard applies to claims of ineffective assistance by both trial and appellate counsel. *United States v. Merida*, 985 F.2d 198, 202 (5th Cir. 1993).

## A. Ineffective Assistance of Trial Counsel

Ajaegbu asserts that his trial attorney provided ineffective assistance by failing to sufficiently investigate his case and by failing to present the mitigating evidence of potential witnesses at trial. On post-conviction review, this court is reluctant to find ineffective assistance based on complaints regarding uncalled witnesses. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Whether or not to present a particular witness's testimony "is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what [the witness] would have testified is too uncertain." *Id*.

Government agents found Ajaegbu's airline ticket in the same compartment of a garment bag as heroin connected with the conspiracy. Ajaegbu contends that his attorney did not interview or call to testify three witnesses -- Howard Leader, Thomas Cascione, and Chukwudi Okolie -- who he alleges would have

5

testified that the heroin seized from the garment bag in a New York apartment did not belong to him, thereby proving his innocence.

To support his claim, Ajaegbu submitted affidavits from Leader and Cascione, both New York attorneys, in which each stated that Okolie admitted ownership of the heroin. Neither attorney states in his affidavit that he would testify at trial. Moreover, had they agreed to testify, any testimony regarding statements made by Okolie would constitute inadmissible hearsay. Ajaegbu also claims that Okolie would testify as to ownership of the heroin. However, he offers no affidavit from Okolie, nor any other evidence that Okolie would have testified or the substance of that testimony had he been willing to do so.

Even assuming the witnesses would have testified as Ajaegbu alleges, Ajaegbu cannot show prejudice because he has not demonstrated the existence of a reasonable probability that the result of the trial would not have been different had the three witnesses testified. A tremendous amount of evidence existed to justify the jury's determination of his involvement in the conspiracy. Sandra Hildebrandt testified that she was recruited to smuggle heroin from Switzerland into the United States and that Peter Ajaegbu was present at the meeting at which the details were discussed. Ajaegbu either purchased Hildebrandt's airline ticket or called in the order to the travel agency. Ajaegbu gave Hildebrandt the telephone number of the contact

6

person in Switzerland and instructions on picking up the heroin upon her arrival. After Hildebrandt successfully smuggled the heroin into the United States, Ajaegbu arrived at Hildebrandt's hotel, retrieved the suitcase containing the heroin, and paid her. Another courier, James Gleason, testified that Ajaegbu personally recruited him to smuggle heroin from Bangkok into the United States. Because potential testimony from Leader, Cascione and Okolie that the heroin seized in New York did not belong to Ajaegbu would not have contradicted the evidence connecting Ajaegbu to the conspiracy, no reasonable probability exists that the outcome would have been different. Because Ajaegbu cannot show prejudice, his claim of ineffective assistance of trial counsel must fail.

**B.   *Ineffective Assistance of Appellate Counsel***

Ajaegbu charges that his appellate attorney provided ineffective assistance by failing to argue on direct appeal (1) that a variance existed between the single conspiracy charged in the indictment and the multiple conspiracies proved by evidence presented at trial, (2) that the court erroneously made an upward adjustment to his sentence for his being a leader or organizer in the conspiracy, (3) that the district court improperly enhanced his sentence for obstruction of justice, and (4) that the prosecutor engaged in misconduct during closing arguments.

**1.   *Variance from the Indictment***

7

Ajaegbu contends that appellate counsel should have argued that the government's evidence proved multiple conspiracies with each conspiracy involving different participants and goals. Ajaegbu also argues that the trial court did not give the jury instructions regarding multiple conspiracies.

When the government proves one conspiracy, evidence of other conspiracies does not necessarily create a material variance. *United States v. Valdez*, 861 F.2d 427, 432 (5th Cir. 1988). On direct appeal, Ajaegbu presented his challenge to the evidence of multiple conspiracies in the form of a challenge to the sufficiency of evidence to support a conviction for the charged conspiracy. In response, this court held that the government produced sufficient evidence to support the jury's finding of a single conspiracy. *Ajaegbu*, No. 93-01929. Ajaegbu's challenge to the competence of his appellate counsel in this respect is meritless.

Ajaegbu raises the challenge to the jury instruction for the first time in this appeal. It is, however, meritless as the jury was correctly charged on its responsibility to determine whether a single conspiracy or multiple conspiracies existed.

## 2. *Role in the Offense Adjustment*

Ajaegbu contends that his appellate counsel provided ineffective assistance for failing to argue that the district court erred in granting an upward adjustment based on Ajaegbu's

role in the offense.  Because a claim that the district court erred in adjusting Ajaegbu's sentence upward based on his role in the offense lacks merit, Ajaegbu cannot demonstrate that his appellate counsel rendered deficient performance in failing to make such a claim.  *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

The Sentencing Guidelines authorizes a three-level increase in Ajaegbu's offense level if he was a manager or supervisor of the charged criminal activity and the criminal activity involved five or more people or was otherwise extensive.  U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(b).  Ajaegbu participated in the activity in which Hildebrandt smuggled heroin from Switzerland and instructed Gleason and Johnny Moore as to the Bangkok trip.  The conspiracy involved at least five persons, including the three defendants, Ajaegbu, Ekwunife, and Contreras, and others including Hildebrandt, Gleason, and Moore.  Thus, any challenge by Ajaegbu's appellate counsel to the court's upward adjustment in Ajaegbu's offense level based on his role in the offense would have lacked merit.

### 3.    *Obstruction of Justice Adjustment*

Ajaegbu contends that his appellate counsel's failure to argue on appeal that the district court neglected to make the fact-findings regarding which portions of Ajaegbu's testimony the

court believed to be lies and the materiality of those lies necessary to support the court's imposition of a two-level increase in his offense level for obstruction of justice constituted ineffective assistance. This claim lacks merit because Ajaegbu has not demonstrated that his appellate counsel's failure to raise this issue on appeal rendered his performance unconstitutionally deficient.

In determining whether a claimant has satisfied the deficiency prong of *Strickland*'s ineffective assistance inquiry, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Our scrutiny of counsel's performance must be 'highly deferential,' and we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

Ajaegbu correctly points out that the district court failed to make the requisite fact-findings regarding the specific statements that the district court believed to be lies and the materiality of these statements. *See United States v. Cabral-Castillo*, 35 F.3d 182, 187 (5th Cir. 1994). However, Ajaegbu's trial counsel did not object to the district court's lack of

10

specific fact-findings regarding these matters; rather, she made only a general objection that Ajaegbu merely told his version of the story at trial and should not be penalized on that basis.[2] Ajaegbu's appellate counsel therefore could have reasonably believed that a claim based on the district court's inadequate fact-findings regarding Ajaegbu's obstruction of justice was not properly preserved for appeal. *See* FED. R. CRIM. P. 51 (providing that, "at the time the ruling or order of the court is made or sought," the party must "make[] known to the court . . . that party's objection to the action of the court *and the grounds therefor*" (emphasis added)); 3A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 843 (2d ed. 1982) ("[I]f a specific objection on one ground is overruled, the party cannot raise some other ground

---

[2] Ajaegbu made the following written objection to the addendum to the PSR that added the sentence enhancement for obstruction of justice:

> Mr. Ajaegbu objects to the two level increase for obstruction of justice. At trial, Mr. Ajaegbu told his version of what happened. The fact that his testimony differed from the government's witnesses [sic] testimony and the jury chose to believe the governments [sic] witness does not mean Mr. Ajaegbu committed perjury when he testified.
>
> To assess a two level increase, which results in an increase of approximately five years incarceration in the Federal Bureau of Prisons, would not be justified under the circumstances. Mr. Ajaegbu merely exercised his constitutional right to testify on his own behalf.

Ajaegbu's trial counsel reiterated this objection before the district judge at the sentencing hearing.

for the objection on appeal.").

If Ajaegbu's trial counsel failed to adequately preserve his claim regarding the inadequacy of the district court's fact-findings to support the sentence adjustment for obstruction of justice, then the claim would have been subject to plain error review on appeal. *See United States v. Ravitch*, 128 F.3d 865, 869 (5th Cir. 1997). Plain error review of the district court's sentencing determination is quite narrow: "'[i]f the case were remanded [and] the trial judge could reinstate the same sentence,' we have upheld the defendant's sentence although the district court's stated reasons for departing evidence a mistaken application of the Sentencing Guidelines." Id. (first set of brackets in original) (quoting *United States v. Brunson*, 915 F.2d 942, 944 (5th Cir. 1990)). Because the district court concluded that Ajaegbu had obstructed justice, it calculated his sentence based on an offense level of 39, which indicated that the applicable sentencing range was 262 to 327 months. *See* U.S. Sentencing Guidelines Manual ch. 5, pt. A tbl. Had the district court not applied the obstruction of justice adjustment, Ajaegbu's offense level would have been 37, with an accompanying sentencing range of 210 to 262 month. *See id*. The court imposed a sentence of 262 months. Thus, under a plain error standard of review, we would have upheld Ajaegbu's sentence on direct appeal even if we concluded that the district court erred in imposing the

obstruction of justice enhancement because the district court *could have* imposed the same sentence in the absence of the enhancement. Because Ajaegbu's appellate counsel could have reasonably believed that a claim relating to the inadequacy of the district court's fact-findings in support of its imposition of the obstruction of justice adjustment was meritless,[3] appellate counsel's failure to raise such a claim on appeal did not render his assistance unconstitutionally deficient. This portion of Ajaegbu's ineffective assistance of counsel claim therefore fails.

### 4. Prosecutorial Misconduct

Ajaegbu asserts that his appellate counsel rendered

---

[3] In reaching this conclusion, we are cognizant of the fact that Ajaegbu's codefendant, Javier Contreras, made the same objection as Ajaegbu to the district court's adjustment of his offense level for obstruction of justice and that a panel of this court ordered the district court to resentence Contreras in light of the fact that it had not made the fact-findings necessary to support an upward adjustment for obstruction of justice. In so doing, the panel provided no indication that it reviewed Contreras's claim regarding the adequacy of the district court's fact-findings only for plain error, thereby implicitly indicating that it found the claim adequately preserved for appeal. However, the fact that a panel of this court ultimately reached the conclusion that the objection at issue here was adequate to preserve a claim relating to the adequacy of the district court's fact-findings regarding obstruction of justice is not dispositive of our determination of whether Ajaegbu's appellate counsel acted in a professionally reasonable manner in concluding *prior to* the panel decision on direct appeal that such a claim was not properly preserved for appellate review. Were we to conclude otherwise, we would violate *Strickland*'s admonition that, in determining whether counsel's performance was deficient, we must make "every effort . . . to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

13

ineffective assistance because he failed to raise a claim of prosecutorial misconduct during closing arguments. "Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). However, "[a]bsent a violation . . . of a specific guarantee of the Constitution, habeas corpus relief will not be granted unless the prosecution's conduct renders the trial fundamentally unfair so as to deny a defendant due process of the Fourteenth Amendment." *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980). "A trial is fundamentally unfair if there is reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy*, 959 F.2d at 1317 (internal quotation marks and citation omitted).

Before the judgment warrants reversal, the prosecutorial remarks "must be more than undesirable or condemnable; they must be so pronounced and persistent as to cast serious doubts on the verdict," *United States v. Rodriguez*, 43 F.3d 117, 124 (5th Cir. 1995), and must have been a "crucial, critical, highly significant factor in the jury's determination of guilt," *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987). The reviewing court analyzes the prosecutor's remarks, "not in isolation, but in context of . . . the trial as a whole." *Estelle*, 631 F.2d at 1233.

Ajaegbu, who is Nigerian, cites the following statements

14

made by the prosecutor as appealing to the racial prejudices of the jury:

> No, ladies and gentlemen, the parties involved starting with Samson Okapala up here and coming up here and coming on down to Cosmas Ekwunife and Peter Ajaegbu here in Dallas, whose function is to recruit girls, and just like Johnny Earl Moore, can you find me some people to—some white people to be introduced to, just like Johnny Earl Moore, they contacted the Defendant Javier Contreras.

The prosecutor's remarks during closing arguments amounted to a summary of the government's evidence as to the means by which the conspiracy operated.  Peter Amakwe testified that members of the conspiracy told him that they "currently used white people to go overseas," rather than "the old way of swallowing the heroin." The prosecutor's solitary reference to "white people" did not constitute pronounced, persistent misconduct, if it constituted misconduct at all under the circumstances.  Moreover, considering the remark in the context of the entire trial and the evidence of Ajaegbu's guilt, there is little likelihood that the remark was a "crucial, critical, highly significant factor in the jury's determination of guilt."  *Ortega*, 808 F.2d at 410-11.  Ajaegbu's counsel was not ineffective for failing to raise this issue on appeal because it is meritless.

Ajaegbu also argues that the prosecutor vouched for the government's witnesses when he made the following comments during closing arguments:

> The Defense would have you believe that this—that

15

> Sandra is the girlfriend of Samson Okapala. . . .
>
> Remember her demeanor on the stand. Was there any guile in her voice? Was there any intent to deceive? . . . She told you what she knew. And she told you who she dealt with and when she dealt with them. . . .
>
> Counsel would have you believe that . . . the government must have lied to you. One grand conspiracy by the government to indict and prosecute these Defendants. . . .
>
> There's an old saying, when the law is in your favor argue the facts. When the facts are against you, argue the law. And when both are against you, attack the government. And that's what's happened here. . . .
>
> If it had been conspired, agreed, trying to develop a case, fabricate a case against these persons, people like James Gleason would have told you that, oh, I saw not only Peter but I saw Cosmos [sic] as well . . . .

A prosecutor must not vouch for a witness's credibility because it implies that the prosecutor has additional personal knowledge about the witness or circumstances garnered through extrajudicial investigation. *United States v. Carter*, 953 F.2d 1449, 1460 (5th Cir. 1992). By nature of the prosecutor's official position, the prosecutor's perceived stamp of approval to the witness's testimony may influence the jury's decision. *Id.*

However, the government may present a bolstering argument "in rebuttal to assertions made by the defense counsel in order to remove any stigma cast" upon a witness. *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995). If the remarks did amount to bolstering, they would not have been improper because they were made during rebuttal.

The prosecutor made these remarks in response to the defense

16

counsel's questioning the credibility of the government's witnesses, in particular Sandra Hildebrandt. Ajaegbu's counsel had argued that Hildebrandt smuggled the heroin for Samson Okapala and not for Ajaegbu and that she covered for Okapala when she testified at trial. Ajaegbu's counsel had further argued that Hildebrandt fabricated a story to cover for Okapala. Viewed in its entirety, the comments by the prosecutor, to rebut assertions made by the defense, were not improper. Therefore, Ajaegbu's appellate counsel did not perform in a deficient manner in failing to raise the issue on appeal.

Ajaegbu's claim of ineffective assistance of appellate counsel fails.

## C.  *Evidentiary Hearing*

Ajaegbu argues that the district court abused its discretion in failing to hold an evidentiary hearing on his § 2255 motion because factual issues are in dispute. A district court may deny a § 2255 motion without a hearing "only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). As the above discussion demonstrates, the district court did not need to hold an evidentiary hearing to resolve Ajaegbu's claims. Accordingly, the district court did not abuse its discretion in failing to hold an evidentiary hearing.

17

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court denying Ajaegbu's § 2255 motion.